*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0075p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　　*Plaintiff-Appellee,*

　　*v.*

No. 06-6248

BRIAN BELL,

　　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 04-20265—J. Daniel Breen, District Judge.

Submitted: October 26, 2007

Decided and Filed: February 14, 2008

Before: KEITH and CLAY, Circuit Judges; STEEH, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Robert C. Brooks, Memphis, Tennessee, for Appellant. E. Greg Gilluly, Jr., ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

CLAY, J., delivered the opinion of the court, in which KEITH, J., joined. STEEH, D. J. (pp. 12-13), delivered a separate dissenting opinion.

_____

## OPINION

_____

CLAY, Circuit Judge. Defendant Brian Bell ("Bell") appeals his conviction, following a jury trial, for possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Bell argues that the district court committed reversible error by admitting into evidence four prior state court drug convictions under Federal Rule of Evidence 404(b) for the purpose of proving absence of mistake or accident and intent. For the reasons that follow, we **REVERSE** the conviction and sentence imposed by the district court and **REMAND** the case to the district court for a new trial.

_____

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.  BACKGROUND

On February 23, 2004, Shelby County Sheriff's officers responded to 9155 Berry Garden Circle in Cordova, Tennessee to investigate a domestic violence complaint concerning Bell and Amber Williams ("Amber"), a fourteen-year-old child who lived at that address.  Upon arrival, Shelby County Deputy Sheriff Walter Blaylock found Bell in a physical altercation with Amber who was crying and showed signs of physical injury.  Officer Blaylock then arrested Bell whom he proceeded to search.  The search uncovered a bag of marijuana and $1,852.00 in cash.

Having secured Bell, Officer Blaylock escorted Amber inside the residence so that she could call her mother, April Armstrong ("Armstrong"), who was at school.  While accompanying Amber to the phone, Officer Blaylock observed marijuana, scales, a cutting board, baggies, and other drug paraphernalia on a coffee table located in the house.

Once Armstrong arrived, Officer Blaylock obtained her consent to search the house.  The subsequent search uncovered over eleven kilograms of marijuana, packaged in small amounts, over ninety grams of crack cocaine, eleven firearms, assorted ammunition, a large digital scale, bags of cigar "blunts," which are commonly used to smoke marijuana, and other tools of the drug trade.

Based on the evidence discovered during this search, Bell was subsequently charged in the United States District Court for the Western District of Tennessee with: (1) possession of 11,071.1 grams of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); (2) possession of 94.6 grams of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).  On August 18, 2004, Bell was arraigned on these charges and entered a plea of not guilty.  The case proceeded to a jury trial on April 10, 2006.

At trial, Amber testified that she lived at 9155 Berry Garden Circle with her mother and Bell who stayed at the house "maybe three or four nights out of the week."  J.A. at 76.  According to Amber, Bell kept several personal belongings at the house, including his pit bull dogs, his clothes, his cologne, and his backpack.  Amber also testified that Bell kept his Lexus in the garage at the house and that he had his own room where he kept his belongings.  Amber further informed the jury that no one else lived in the house with her and her mother during February of 2004.

Armstrong likewise testified that in February of 2004 Bell lived with her and her daughter at the residence which she leased at 9155 Berry Garden Circle.  Armstrong indicated that Bell assisted in paying the bills for the residence and that, although he was "in and out," he "lived there most of the time," sharing a bedroom with her.  J.A. at 141.  She also confirmed that Bell had access to the entire house, had his own room where he stored his belongings, and occasionally had visitors to the house.  Armstrong further testified that the drugs and guns found in the house were not hers.

In response to these witnesses, Deeta Johnson ("Johnson") testified for the defense that Bell was her fiancé, and that he lived with her and her seven-year-old son in Memphis, Tennessee.  Johnson testified that Bell stayed with her "[b]asically every night" and that he was only gone about "two nights out of the week," in order to, as he informed Johnson, stay "[a]t his aunt's."  J.A. at 439.  Bell offered no other witnesses on his behalf.

In addition to the testimony of these witnesses, the arresting officers, and police drug testing experts, the jury was also presented with evidence of Bell's four prior state court drug convictions: (1) an October 16, 1997 conviction for possession of marijuana with intent to distribute; (2) an October 16, 1997 conviction for possession of cocaine base with intent to distribute; (3) a June 18, 1999 conviction for possession of marijuana with intent to distribute; and (4) a June 18, 1999 conviction for possession of cocaine base with intent to distribute.

Prior to trial, the government had filed a motion in limine, seeking the admission of these prior convictions, under Federal Rule of Evidence 404(b), for the purpose of demonstrating knowledge, intent, and absence of mistake or accident. Bell had opposed the motion and the district court deferred ruling on the motion until later in the trial.

While the issue came up at various points in the trial, the district judge did not directly return to the government's Rule 404(b) motion in limine until the close of Bell's case. At that time, the government renewed its request to introduce the evidence of Bell's prior drug convictions to show knowledge, intent, and absence of mistake. Bell objected to the admission of such evidence on the basis of its highly prejudicial nature. The district judge then proceeded to engage in the three step inquiry required for the admission of 404(b) evidence. The district judge determined that the certified records of the convictions were sufficient evidence to demonstrate that these other acts had occurred. The district judge also examined the government's purported purposes for introducing the evidence:

> The second issue deals not only with whether or not [the convictions] can be proved, but whether they – whether the government has articulated an appropriate basis under 4004(b) [sic] for the admission of such type – such evidence, in other words, whether or not they have submitted sufficient argument and proof to the court and based upon the court's review of the record as to whether or not one or more of the permitted admissibility bases is present. . . . I think it's cited in [*United States v. Ismail*, 756 F.2d 1253 (6th Cir. 1985)] and [*United States v. Lattner*, 385 F.3d 947 (6th Cir. 2004)] that, when the defendant in such a charge enters a plea of not guilty, basically he is putting every element, including the intent aspect, to the government's proof. And, as well, the court believes that the defendant's position in this case has been that he was not aware, he was – he did not know these drugs were there or they were planted by someone else, put in there by somebody else, you know, that this was simply he just happened to be – he was an innocent person in terms of their being present or it was a mistake or an accident or just happened to be there.
> I think under the circumstances of what I've heard from the proof, is that the government's submission of this evidence would go towards the issue of intent and absence of mistake or accident.

J.A. at 482-83. Finally, the district judge weighed the probative value of the evidence against its prejudicial impact and found that, with a limiting instruction to the jury, the latter would not substantially outweigh the former, and, accordingly, permitted the introduction of the evidence.

When introducing the certified judgments of Bell's prior convictions, the district court cautioned the jury:

> Ladies and gentlemen, the court has permitted the introduction of testimony – or evidence, rather, here regarding the defendant, Mr. Bell, about committing – the commission of other crimes other than the ones that are charged in the indictment.
> Now if you find that the defendant committed these acts, these crimes, you can consider the evidence only as it relates to the government's claim on the defendant's intent or absence of mistake or absence of accident. You may not consider it for any other purpose. And I'll give this instruction to you again when I give you the final instruction. But remember and keep this in mind, that the defendant is on trial here only for the offenses that he is charged with in this indictment, which again I will read to you. So the burden still remains on the government to prove its case beyond a reasonable doubt and, again, the defendant is not on trial for any previous act, but only for those that are charged here in this indictment.

J.A. at 491. After the closing arguments and before dismissing the jury for deliberations, the district court repeated a similar instruction:

> Now, you heard testimony that the defendant committed crimes other than the ones charged in the indictment. If you find that the defendant did these crimes, you can consider the evidence only as it relates to the government's claim on the defendant's intent, absence of mistake, or absence of accident. You must not consider it for any other purpose. Now, remember that the defendant is on trial here for only those charges in the indictment and not for the other acts. Do not return a guilty verdict unless the government proves the crime charged in the indictment beyond a reasonable doubt.

J.A. at 560.

On April 13, 2006, the jury found Bell guilty of all three charges. On September 18, 2006, the district judge sentenced Bell to sixty months imprisonment on count 1, life imprisonment on count 2, and one-hundred-twenty months imprisonment on count 3. The district judge ordered that the sentences should run concurrently and be followed by 10 years of supervised release.

On September 22, 2006, Bell filed his timely notice of appeal.

## II.  DISCUSSION

On appeal, Bell challenges the district court's admission of the evidence of his prior drug convictions under Rule 404(b). We find this Rule 404(b) claim to have merit and hold that the district court erred by permitting the government to introduce evidence of Bell's prior drug convictions. Because we also find that the admission of this evidence violated Bell's right to receive a fair trial, we reverse Bell's conviction and remand the case for a new trial.

### A.      Standard of Review

We generally review the district court's admission or exclusion of evidence for abuse of discretion. *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006). However, in the specific context of Rule 404(b):

> [W]e employ a three-part test, reviewing (1) for clear error the district court's determination that the 'other act' took place; (2) *de novo* the district court's legal determination that the evidence was admissible for a proper purpose; and (3) for abuse of discretion the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect.

*United States v. Ayoub*, 498 F.3d 532, 547 (6th Cir. 2007). *Accord United States v. Rayborn*, 495 F.3d 328, 342 (6th Cir. 2007); *United States v. Murphy*, 241 F.3d 447, 450 (6th Cir. 2001); *United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir. 1996). *But see United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002) (refusing to apply *de novo* review to the district court's determination that the contested evidence was admissible for a proper purpose, and applying abuse of discretion standard instead). "These standards are not in fact inconsistent, because it is abuse of discretion to make errors of law or clear errors of factual determination." *Ganier*, 468 F.3d at 925 (citation and internal quotation marks omitted).

Under the abuse of discretion standard, "we will leave rulings about admissibility undisturbed unless we are left with the definite and firm conviction that the district court committed a clear error in judgment." *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005). "Broad discretion is given to district courts in determinations of admissibility based on considerations of

relevance and prejudice, and those decisions will not be lightly overturned." *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006). "A new trial is not required unless the error affects substantial rights." *Id.* (citing Fed. R. Crim. P. 52).

**B.      Rule 404(b) Analysis**

Federal Rule of Evidence 404(b) states, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It *may*, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b) (emphasis added). Admission of evidence under Rule 404(b) is also subject to the requirements of Rule 403 which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

Interpreting the requirements of these rules, we have outlined a three-step process for the admission of Rule 404(b) evidence:

> First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative.

*United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004). *Accord United States v. Abboud*, 438 F.3d 554, 581 (6th Cir. 2006); *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003). Once the district court decides that the evidence is admissible under Rule 404(b), then it "must carefully identify in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden [by] Rule 404(b)." *United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994). *Accord Abboud*, 438 F.3d at 581.

Applying these factors to this case reveals that the district court erred in admitting the evidence of Bell's prior drug convictions for the purpose of demonstrating absence of mistake or accident and intent, and abused its discretion in finding that the probative value of this evidence on the issue of intent was not substantially outweighed by its prejudicial impact. Because this error was not harmless, Bell is entitled to a new trial.

**1.      Sufficient Evidence That Other Acts Occurred**

The first step that the district court must engage in under the Rule 404(b) analysis is to determine whether there is sufficient evidence to show that the defendant committed the other acts. The Supreme Court has held that the government is not required to demonstrate that the other acts occurred by a preponderance of the evidence. *Huddleston v. United States*, 485 U.S. 681, 689 (1988). However, the government cannot introduce evidence of potentially prejudicial similar acts without any substantiation. "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.*

In the instant case, the evidence of Bell's prior drug convictions included certified copies of the conviction records. At trial, Bell did not contest that these records were accurate or claim he did not commit the prior crimes. On appeal, Bell has likewise refrained from arguing that the evidence

presented was insufficient to show he committed the prior drug offenses. Accordingly, the district court's conclusion that there was sufficient evidence to show that Bell had committed the prior drug offenses was not clearly erroneous.

### 2.          **Admissible For Legitimate Purpose**

The second step of the district court's Rule 404(b) analysis is to determine whether the other acts evidence is admissible for a legitimate purpose. "To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide 'whether that evidence is probative of a material issue other than character.'" *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004) (quoting *Huddleston*, 485 U.S. at 686)). This requires a three part inquiry. "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Rayborn*, 495 F.3d at 342 (quoting *Jenkins*, 345 F.3d at 937).

The district court found and instructed the jury that the evidence of Bell's prior convictions was admissible to show both absence of mistake or accident, and intent. We find this instruction to be erroneous.

Absence of mistake or accident is one of the permissible purposes listed in Rule 404(b). However, "the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." *Merriweather*, 78 F.3d at 1076. Thus, for other acts evidence to be admissible for the purpose of showing absence of mistake or accident, the defendant must assert a defense based on some type of mistake or accident. *See United States v. Newsom*, 452 F.3d 593, 606 (6th Cir. 2006) (finding absence of mistake not to be a permissible purpose, in a felon in possession case, when the defendant's only defense was that the gun was not his and that he did not know that it was under his seat); *United States v. Ward*, 190 F.3d 483, 489 (6th Cir. 1999) (rejecting absence of mistake as a permissible purpose for the admission of evidence when the defendant's "defense was not that she mistakenly thought she was selling powdered sugar instead of cocaine"); *Merriweather*, 78 F.3d at 1077 (noting that "absence of mistake 'on behalf of the government' is not a legitimate basis to admit other acts evidence").

The district court erred in concluding that the evidence of Bell's prior convictions was admissible for the purpose of demonstrating absence of mistake or accident. This case did not present an issue of mistake or accident. Bell's argument was not that he was mistaken about the narcotic nature of the substances seized by the police, but rather that he never possessed the marijuana and crack cocaine. The district court recognized that there was "no indication from [Bell's] arguments or anything that has been put on that would indicate that Mr. Bell knew something was there, but didn't know it was drugs." J.A. at 472. On the contrary, the district court believed Bell's position to be that "he did not know these drugs were there or they were planted by someone else, put in there by somebody else, [that] he was an innocent person in terms of their being present or it was a mistake or accident or just happened to be there." J.A. at 483. In other words, Bell was claiming that it was a mistake for the police to think that the drugs were his, not that he was mistaken about the fact that the substances found were drugs. As Bell "never claimed that he was unknowingly dealing in cocaine or was unwittingly engaging in unlawful activity," the evidence of his prior drug convictions could not be properly admitted for the purpose of absence of mistake or accident. *Merriweather*, 78 F.3d at 1077.

Proving intent, however, was a potentially legitimate reason for the government to offer evidence of Bell's prior convictions. Rule 404(b) specifically lists demonstrating a defendant's intent as a permissible purpose. Moreover, Bell's intent to possess and distribute was at issue

because it is an element that the government must prove to establish possession with intent to distribute. *See* 21 U.S.C. § 841(a)(1) ("[I]t shall be unlawful for any person knowingly or *intentionally* to . . . possess with *intent* to . . . distribute . . . a controlled substance") (emphasis added); *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006) ("The elements of a charge of possession with intent to distribute illegal drugs are: (1) the defendant knowingly, (2) possessed a controlled substance, (3) with intent to distribute."). By "plead[ing] not guilty to the offense of possession with intent to distribute, [Bell] put his general intent and specific intent at issue, thereby giving the government the burden to establish both beyond a reasonable doubt." *Lattner*, 385 F.3d at 957. "[W]here the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with specific intent notwithstanding that the defense was lack of possession, not lack of intent to distribute." *United States v. Bilderbeck*, 163 F.3d 971, 977 (6th Cir. 1999). *See also Lattner*, 385 F.3d at 957 ("[W]hen a defendant is charged with a specific intent crime, such as possession with intent to distribute, 404(b) evidence is admissible to prove intent, subject to the probative/prejudicial balancing"); *Johnson*, 27 F.3d at 1192. Accordingly, the district court properly found that the evidence was being offered for the admissible purpose of intent and that this purpose was at issue in the case.

However, whether the evidence of Bell's prior drug convictions was probative on the issue of intent is a closer question. "To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue." *Haywood*, 280 F.3d at 721 (quoting *Blankenship*, 775 F.2d at 739). *But see United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985) ("There is no absolute maximum number of years that may separate a prior act and the offense charged."). Thus, we have drawn a distinction between the probative value of prior acts of *personal drug use* and prior acts of *drug distribution*, finding the former not to be probative of intent to possess and distribute. *See Jenkins*, 345 F.3d at 937-38 ("Jenkins' admission that she is a crack cocaine user does not *ipso facto* lead to the conclusion that she was involved in the distribution of crack cocaine."); *Haywood*, 280 F.3d at 721-22 ("Acts related to the personal use of a controlled substance are of a wholly different order than acts involving the distribution of a controlled substance. One activity involves the personal abuse of narcotics, the other the implementation of a commercial activity for profit.") (quoting *United States v. Ono*, 918 F.2d 1462, 1465 (9th Cir. 1990)).

Likewise, while we "have repeatedly recognized that prior drug distribution evidence is admissible to show intent to distribute," *Ayoub*, 498 F.3d at 548 (citing *Jenkins*, 345 F.3d at 938 (collecting cases)), our cases have only found such evidence probative of present intent to possess and distribute when the prior distributions were part of the same scheme or involved a similar *modus operandi* as the present offense. *See, e.g.*, *United States v. Robinson*, 904 F.2d 365, 368 (6th Cir. 1990) (admitting testimony about the defendant's statements to co-conspirator regarding his intent to distribute in prior drug transactions to show present intent to distribute in transaction with same co-conspirator); *United States v. Rodriguez*, 882 F.2d 1059, 1064-65 (6th Cir. 1989) (admitting evidence of prior drug transactions with same accomplice as in present case for the purpose of showing intent, plan, and knowledge). Unless the past and present crime are related by being part of the same scheme of drug distribution or by having the same *modus operandi*, the fact that a defendant has intended to possess and distribute drugs in the past does not logically compel the conclusion that he presently intends to possess and distribute drugs. *See United States v. Bakke*, 942 F.2d 977, 983 (6th Cir. 1991) (holding that evidence of the defendant's arrest in a "totally unrelated drug transaction" six months after the charged drug conspiracy only showed that the defendant was a drug dealer at the time of the later transaction and did not prove that the defendant was a member of the drug conspiracy). Indeed, a person may be a distributor of drugs on one occasion, and a mere user on another. The only way to reach the conclusion that the person currently has the intent to possess and distribute based solely on evidence of *unrelated* prior convictions for drug distribution is by employing the very kind of reasoning – *i.e.*, once a drug dealer, always a drug dealer – which 404(b) excludes. *See Old Chief v. United States*, 519 U.S. 172, 180-81 (1997). Thus, to be

probative of a defendant's present intent to possess and distribute, his prior convictions for drug distribution must be related in some way to the present crime for which the defendant is on trial.

Here, Bell's prior convictions were for unlawful possession of cocaine and marijuana with intent to distribute, the same type of charges at issue in this case. However, the convictions were for offenses that occurred several years previously and were not alleged to be part of the same scheme to distribute drugs or to involve a similar *modus operandi*. Such evidence of prior distribution, unconnected to the present charge, is not probative of whether Bell intended to possess and distribute drugs in the instant case. Accordingly, the district court erred in finding evidence of these prior convictions admissible for the legitimate purpose of proving Bell's intent.

### 3. Prejudicial/Probative Balancing

As the district court erred in finding that evidence of Bell's prior drug convictions was admissible for the purpose of demonstrating intent and absence of mistake, our Rule 404(b) analysis need proceed no further. However, in order to assuage any doubts about the error committed by the district court in its Rule 404(b) ruling, we address the further mistake committed by the district court in the final step of its Rule 404(b) analysis.

This final part of the Rule 404(b) analysis requires the district court to determine whether the prejudicial impact of the proffered evidence substantially outweighs its probative value. In *Johnson*, we explained the rationale for this balancing requirement:

> When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact. That, of course, is why the prosecution uses such evidence whenever it can. When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person, a convicted criminal, and that if he "did it before he probably did it again." That is why the trial court's duty is to apply Rule 404(b) correctly and, before admitting such evidence, to decide carefully whether it will be more substantially prejudicial than probative.

27 F.3d at 1193. The Supreme Court has further clarified that "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. Such improper grounds include "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the latter bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." *Id*. at 180-81. "A limiting instruction will minimize to some degree the prejudicial nature of other criminal acts; it is not, however, a sure-fire panacea for the prejudice resulting from needless admission of such evidence." *Haywood*, 280 F.3d at 724.

With regard to the probative value of the evidence, the Supreme Court has suggested that the district court should consider "the full evidentiary context of the case as the court understands it when the ruling must be made." *Old Chief*, 519 U.S. at 182. The Fifth Circuit has explained:

> Probity in this context is not an absolute; its value must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference. . . . Thus, if the Government has a strong case on the intent issue, the extrinsic evidence may add little and consequently will be excluded more readily. . . . In measuring the probative value of the evidence, the

judge should consider the overall similarity of the extrinsic and charged offenses. If they are dissimilar except for the common element of intent, the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence.

*United States v. Beechum*, 582 F.2d 898, 914-15 (5th Cir. 1978). We have similarly found that the district court should consider the government's alternative sources of proving intent when weighing the probative value of other acts evidence. *See Haywood*, 280 F.3d at 723; *Merriweather*, 78 F.3d at 1078-79 ("One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof.").

Because of the highly discretionary nature of this balancing process, the district court's decision is afforded great deference. *Chambers*, 441 F.3d at 455. *Accord United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999) ("[T]he district court enjoys broad discretion in balancing probative value against prejudicial impact."). In reviewing the district court's balancing of prejudice and probative value, "we look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Chambers*, 441 F.3d at 455 (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). *Accord United States v. Maliszewski*, 161 F.3d 992, 1010 (6th Cir. 1998).

Despite the substantial deference that must be afforded a lower court's Rule 403 balancing decision, we find that the district court abused its discretion in the instant case. We have already noted that the evidence of Bell's prior convictions was not probative of his present intent to possess and distribute, the only plausibly legitimate purpose for offering this evidence. However, even assuming that this evidence would have some probative value on the issue of intent, its value would be slight. Bell's prior distribution of drugs several years prior to the instant offense does not necessarily imply that he was intending to possess and distribute drugs on this occasion. The only way that such evidence would be probative is if the jury were permitted to infer that because Bell has distributed drugs in the past, it is likely that he was doing so in the present case. Yet, this is the very kind of propensity reasoning which Rule 404(b) prohibits the jury from using in assessing the probative value of Bell's prior convictions and prevents the judge from considering when engaging in the Rule 403 balancing process. *See Old Chief*, 519 U.S. at 182.

Moreover, the government had little, if any, need for such evidence to establish Bell's intent. "The government had a number of means available to it to prove [Bell's] specific intent to distribute and possess cocaine, without showing that he was involved in" previous drug crimes. *Merriweather*, 78 F.3d at 1078. The testimony at trial established that the police recovered over twenty pounds of marijuana, packaged in small amounts, which is consistent with distribution, and over ninety grams of crack cocaine. These quantities alone were sufficient to demonstrate intent to distribute. *See United States v. Faymore*, 736 F.2d 328, 333 (6th Cir. 1984) (finding that intent to distribute may be inferred from large quantities of drugs). The police also found drug scales, a cutting board, baggies, cigar "blunts," and other drug paraphernalia which strongly suggest an intent to distribute. The government attorney appears to have recognized the powerful weight of this other evidence in its closing argument when he stated:

I would submit with regard to the drugs [sic] intent to distribute. Your common sense. You heard the testimony. I submit it's undisputed. It is undisputed that that amount of crack cocaine, that amount of marijuana is indicative of an intent to distribute. You combine the scales, you combine the packaging materials, you combine the cutting board, all of that demonstrates an intent to distribute. I submit its not even a contested issue.

J.A. at 515. Tellingly, the government attorney did not even mention the evidence of Bell's prior convictions when explaining why the jury should find that he had the requisite intent to distribute. Indeed, the strength of this other evidence of intent was so overwhelming that the evidence of Bell's prior convictions could only have been marginally probative at best.

In contrast to the weak probative value of the evidence of Bell's prior convictions, its prejudicial impact was significant. Evidence of a defendant's prior crimes "unquestionably has a powerful and prejudicial impact." *Johnson*, 27 F.3d at 1193. Here, the evidence of Bell's prior crimes painted a picture of Bell as a repeat drug offender, greatly increasing the chance that the jury would punish him not for his involvement in the offense at issue, but rather because he appeared to be a "bad" guy. By "branding [Bell] as a criminal possessing crack cocaine, the evidence had 'the natural tendency to elicit the jury's opprobrium for [Bell]." *Jenkins*, 345 F.3d at 939 (quoting *United States v. Spikes*, 158 F.3d 913, 929 (6th Cir. 1998)). Given the prejudicial nature of this evidence, "the likelihood [was] very great that the jurors [would] use the evidence precisely for the purpose [for which] it may not be considered; to suggest that the defendant [was] a bad person, a convicted criminal, and that if 'he did it before, he probably did it again.'" *Johnson*, 27 F.3d at 1193.

The district court's limiting instructions to the jury did little to abate this prejudicial impact. These instructions did remind the jury that Bell was on trial only for the charged offenses and not for his prior bad acts. However, by directing the jury to consider these acts for the purpose of ascertaining Bell's intent, the court was implicitly approving the kind of reasoning which would suggest that because Bell was a drug distributor in the past, the jury should consider him to have distributed drugs in the present case. Moreover, the court's instruction created the possibility for an even greater prejudicial impact by directing the jury to consider the evidence of Bell's prior convictions for the purpose of absence of mistake, a matter which was not even at issue in the case. Such confusion of the purpose of this other acts evidence was likely to create more rather than less prejudice. *See Merriweather*, 78 F.3d at 1079 (finding that jury instructions which "left the jury free to consider" the other acts evidence for several impermissible purposes "permitted the jury to draw the very inference forbidden by Rule 404(b)"). Thus, even if we were to find that the evidence of Bell's prior drug convictions was properly admissible to demonstrate his intent to distribute, we are left with the definite and firm conviction that the district court committed a clear error in judgment when it found that the highly prejudicial impact of this evidence did not substantially outweigh the slight, if any, probative value it may have provided.

As the district court (1) erred in finding that the evidence of Bell's prior bad acts was admissible for the purposes of proving intent and demonstrating absence of mistake or accident, and (2) abused its discretion in finding that the limited probative value of this evidence was not substantially outweighed by its highly prejudicial impact, we conclude that the district court's admission of this evidence under Rule 404(b) was erroneous.

## C.　　Harmless Error Inquiry

Even though the district court's admission of the evidence of Bell's prior drug convictions was erroneous, Bell is not entitled to a new trial if this error was harmless. As we have previously stated, "[a]n error in the admission of evidence does not require granting a criminal defendant a new trial unless the error affects 'substantial rights.'" *United States v. DeSantis*, 134 F.3d 760, 769 (6th Cir. 1998) (quoting Fed. R. Crim. Proc. 52(a)). *Accord Murphy*, 241 F.3d at 453. In short, we must "consider the impact of the error upon the right of the defendant to a fair trial." *Layne*, 192 F.3d at 573. "We must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all that happened." *Murphy*, 241 F.3d at 453 (quoting *United States v. Cowart*, 90 F.3d 154, 158 (6th Cir. 1996)). Our concern is not "with whether there was sufficient evidence on which [the defendant] could have been convicted without the evidence complained of,"

but rather the "question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *DeSantis*, 134 F.3d at 769 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86 (1963); *O'Guinn v. Dutton*, 88 F.3d 1409, 1461 (6th Cir. 1996)). "We will presume that the district court's error was reversible unless we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by error.'" *Haywood*, 280 F.3d at 724 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). "Whether the jury was 'substantially swayed' by the improper admission of evidence of other acts in a criminal trial generally depends on whether the properly admissible evidence of the defendant's guilt was overwhelming." *Id.* "When the government presents other convincing evidence, we may deem the admission of 404(b) evidence mere harmless error." *Layne*, 192 F.3d at 573. The "giving of a curative instruction by the trial court [also] occasionally renders harmless the erroneous admission of prejudicial evidence." *Id.*

In the instant case, there is a reasonable probability that the wrongly admitted evidence of Bell's prior drug convictions contributed to his conviction in this case. As already indicated, this evidence was highly prejudicial and suggested to the jury that Bell was an habitual drug dealer who should be kept off the streets. The evidence of these prior drug convictions painted a picture of Bell as a career drug dealer, making it substantially more likely that the jury would convict him, not on the evidence presented, but rather because of a belief that if Bell dealt drugs in the past, he probably possessed and intended to distribute the drugs in the present case. Rather than limiting the odds that the jury would employ this propensity reasoning during its deliberations, the district court's flawed instruction, which wrongly permitted the jury to consider the evidence of Bell's prior drug convictions for the purposes of intent or absence of mistake, in all likelihood probably increased them.

The weak evidence of possession presented in the case further increased the likelihood that such impermissible reasoning would motivate the jury to convict Bell. While the immense quantity of drugs found at 9155 Berry Garden Circle (over 11,000 grams of marijuana and 94.6 grams of crack cocaine) as well as the packaging and distribution paraphernalia present in the home provided overwhelming evidence of someone's intent to distribute the drugs, the government's evidence to connect Bell to those drugs, and thus demonstrate that Bell was the person who intended to distribute them, was only circumstantial. The government offered no witnesses who could directly link Bell to the drugs found at 9155 Berry Garden Circle. Amber and Armstrong did testify at trial that Bell spent a few nights of each week at 9155 Berry Garden Circle and stored his possessions there. However, they could not confirm that the drugs found at the apartment belonged to Bell. Moreover, their testimony was refuted by Johnson who reported that Bell stayed at her place almost every night. While a reasonable jury could find that Bell possessed the drugs based upon this evidence, it would not be compelled to do so. Rather, given this circumstantial and disputed evidence, it is reasonably probable that the tipping factor for the jury was the evidence of Bell's prior drug convictions.

As the record in this case does not provide us with the fair assurance that the jury's verdict was not substantially swayed by the evidence of Bell's prior convictions, we cannot find that the admission of this evidence was harmless. Accordingly, we conclude that Bell is entitled to a new trial.

### III. CONCLUSION

For the foregoing reasons, the conviction and sentence imposed by the district court are **REVERSED** and the case is **REMANDED** to the district court with instructions to provide Bell with a new trial.

———————

**DISSENT**

———————

GEORGE C. STEEH, District Judge, dissenting. I respectfully dissent. In the context of determining the admissibility of proposed Rule 404(b) evidence, the majority opinion correctly concludes that Bell's general intent to possess the illegal drugs and firearms, and his specific intent to distribute drugs, were both placed at issue by his not guilty pleas. Majority Op. at 11-12.

> [T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense. In the federal courts, "[a] simple plea of not guilty . . . puts the prosecution to its proof as to all elements of the crime charged."

*Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991) (quoting *Mathews v. United States*, 485 U.S. 58, 64-65 (1988)). Bell's not guilty pleas put the government to its proofs that Bell knowingly or intentionally possessed the 11 kilograms of marijuana and 94.6 grams of crack cocaine found inside the residence, and that Bell specifically intended to distribute these drugs. 21 U.S.C. § 841(a)(1); *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006).

The majority analysis discusses reasons for refusing admission of Bell's prior drug convictions to prove the absence of mistake or accident, or to prove specific intent to distribute the drugs, yet generally overlooks the government's burden of proving Bell *knowingly or intentionally* possessed the drugs and guns. The district court properly focused its attention on the general intent required to prove the § 841(a)(1) crime of knowingly or intentionally exercising dominion and control over illegal drugs, in response to Bell's defense that "he did not know these drugs were there or they were planted by someone else[.]" J.A. 482-83. The district court's inclusion of "absence of mistake" and "absence of accident," along with "intent," as purposes for admitting Bell's prior drug convictions, recognized the government's burden of proving that Bell did not mistakenly or accidently possess the drugs by simply living at the home where the drugs were found.

The district court also properly relied on *United States v. Lattner*, 385 F.3d 947 (6th Cir. 2004) in deciding to admit Bell's prior drug convictions under Rule 404(b). As reasoned in *Lattner*, "it seems logical that when [the defendant] pled not guilty to the offense of possession with intent to distribute, he put his general intent and specific intent at issue, thereby giving the government the burden to establish both beyond a reasonable doubt." *Id*. at 957. Citing *United States v. Ismail*, 756 F.2d 1253 (6th Cir. 1985), a case also relied on by the district court, the *Lattner* court recognized that "claims of innocent presence or association . . . *routinely* open the door to 404(b) evidence of other drug acts." *Lattner*, 385 F.3d at 957 (emphasis added).

Logically, Bell's prior convictions represent compelling probative evidence of his general intent to possess the marijuana and crack cocaine. Bell's history includes knowing and intentional acts in relation to illegal drugs, making it much less plausible that Bell lacked knowledge on this occasion of the presence of over 11 kilograms of marijuana, 94.6 grams of crack cocaine, eleven firearms, drug packaging materials, and tools of the drug trade inside the home. Bell's prior acts of drug distribution diminish the likelihood that he innocently overlooked the illegal contraband within the residence, and also diminish the chances that these items were planted or left at the residence by someone else.

In short, the Rule 404(b) evidence of Bell's four prior drug convictions is powerfully probative of Bell's general and specific intent. While the prior acts evidence greatly undermines Bell's opening statement to the jury that "he had *no knowledge* whatsoever about the contents that

were in that house," J.A. 72 (emphasis added), the prior acts evidence was not *unfairly* prejudicial. Bell's closing argument criticizes the absence of any evidence of actual possession or direct evidence of his constructive possession of the contraband. J.A. 521-526. Just as the $1,800.00 cash in Bell's pocket at the time of arrest constitutes important circumstantial evidence of his constructive possession, so does the prior acts evidence admitted by the court. The record below includes an accurate analysis of the Rule 403 balancing that preceded the decision to admit this evidence. The district judge's admission of Bell's prior convictions cannot be said to be an abuse of discretion, and if we truly afford great deference to the trial court's decision, this conviction should be affirmed.