NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0276n.06

No. 23-3336

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 25, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| TERRIS CHANLEY BAKER, | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: SILER, CLAY, and GRIFFIN, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Terris Baker was convicted of several charges relating to his conspiracy to defraud the Internal Revenue Service ("IRS") in violation of 18 U.S.C. §§ 371, 641, 642, 287, 282, and 1956. In this appeal, Baker challenges (1) the district court's admission of a 2017 phone call between Baker and a co-conspirator under Federal Rule of Evidence 404(b); (2) the district court's failure to allow Baker's co-defendant to call a government witness over the government's objection; and (3) the district court's denial of Baker's request to substitute counsel ahead of sentencing. For the reasons set forth below, we **AFFIRM** Baker's conviction.

## I. BACKGROUND

### A. Factual Background

Between approximately January 2015 and September 2015, Defendant Terris Baker conspired with co-Defendant Robert Rohrbaugh and separately charged and convicted defendant Brandon Mace to defraud the United States government by filing false tax returns and collecting refunds. At the time, Mace was incarcerated in federal prison and corresponded with Baker about

the conspiracy via email. The indictment alleged that Mace prepared the fraudulent tax returns, which Baker then sent. Baker then received and deposited the associated refund checks in accounts Baker created. Baker, Rohrbaugh, and Mace all withdrew money from the accounts.

The IRS detected the fraud around August 2015, after it distributed significant sums of money to Baker in the form of refund checks. The IRS subsequently froze one of the fraudulent bank accounts. Baker and Mace discussed the fact that the IRS had detected their scheme on a phone call in late August 2015. But the government took no enforcement action at that time, and Baker and Mace did not continue the conspiracy.

In November 2017, Mace called Baker and asked if Baker would like to participate in the scheme again. Unbeknownst to Baker, however, the government had approached Mace and persuaded him to cooperate with law enforcement and act as a government informant. During the phone call, Mace said he would need Baker's assistance to help "reel this fish in" (a euphemism for the scheme) and that Mace would need "an account." Baker responded: "Just let me know. . . . I'll take care of all that. That's not a problem. I got you on that. If you need me to, you know, do it this week or whatever, you know, just let me know and I'll take care of it." No known overt acts in furtherance of a conspiracy followed this conversation.

In 2020, Baker was charged with (1) conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371; (2) aiding and abetting theft of government property in violation of 18 U.S.C. §§ 641 and 2; (3) aiding and abetting false claims against the United States in violation of 18 U.S.C. §§ 287 and 2; and (4) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

**B. Procedural Background**

Baker and Rohrbaugh's case proceeded to trial. On April 1, 2022, the United States filed a notice of intent to introduce the November 2017 conversation between Baker and Mace. The government alleged that the call was admissible under Rule 404(b) of the Federal Rules of Evidence as probative of Baker's intent, motive, plan, preparation, knowledge, or absence of mistake. Over Baker's objections, the district court ruled that the evidence was admissible because it was probative of knowledge, a valid 404(b) purpose, and did not unduly prejudice Baker.

Near the close of trial, Rohrbaugh sought to call IRS Special Agent John O'Boyle to testify "about certain recordings presented at trial, the chain of custody of those recordings, and about actions taken by Mr. Mace as an informant." Appellant Br., ECF No. 33, Page ID #11. In response, the government argued that Rohrbaugh had failed to comply with certain federal regulations for subpoenaing IRS agents to testify. *See generally U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (describing generally regulations with which defendants must comply when calling government agents as witnesses); 26 C.F.R. § 301.9000-3 ("[N]o IRS officer . . . shall testify . . . without a testimony authorization"). Baker's attorney indicated that he had an interest in O'Boyle's testimony but had not sought a subpoena himself. The district court indicated reluctance to delay the jury's deliberations and noted that it was "open to reopening the evidence in the defense case to allow the examination of Special Agent O'Boyle." R. 130, Page ID #3515. The district court did not make any findings regarding *Touhy* compliance or the necessity of O'Boyle's testimony on the record, but "urge[d] [the government] to remain open to receiving information, e-mails from the defense should either or both [defendants] decide to send [the government] something." *Id.* at Page ID #3557. Neither defense attorney contested this statement by the district court, made any

further arguments regarding Rohrbaugh's attorney's *Touhy* compliance, or brought up the issue again.

Baker was convicted on all four counts on which he was indicted and was allowed to remain out on bond pending sentencing. At trial and throughout sentencing, Baker was represented by Edward Hartwig, a court-appointed attorney, and the district court commended his trial performance on the record. Prior to sentencing, Hartwig filed a motion to withdraw, stating that Baker "has contacted the undersigned counsel and explicitly stated that he is terminating the services" of counsel "due to irreconcilable differences." R. 199, Page ID #4404. At the sentencing hearing, Baker struggled at first to articulate a coherent conflict with his counsel. Eventually, Baker stated that there was a "conflict of interest" between himself and Hartwig. R. 251, Page ID #5458. Baker claimed that "there was a lot of things that [Hartwig] could have presented in [Baker's] defense that were never presented." *Id.* In particular, Baker claimed that Hartwig did not cross-examine certain witnesses at trial to Baker's liking and did not properly subpoena Special Agent O'Boyle.

The district court noted that because Hartwig was appointed pursuant to the Criminal Justice Act, Baker did not "have a choice when it comes to appointed counsel." *Id.* at Page ID #5450–51. The district court then stated that if Baker was able to convince the court that he was "unable or unwilling to work with Mr. Hartwig, [it] would consider giving [him] new counsel." *Id.* at Page ID #5462. But the district court noted that if it did so, it would take Baker into custody pending rescheduling of the sentencing hearing. Baker then indicated he would proceed with sentencing with Hartwig as his attorney. Baker was ultimately sentenced to 98 months' imprisonment. He timely appealed.

## II. DISCUSSION

Baker brings up three issues on appeal: (1) that the district court erred in admitting an allegedly prejudicial phone call between himself and his co-conspirator; (2) that the district court erred in failing to order an IRS agent to testify when defense counsel had purportedly complied with the relevant procedures; and (3) that the district court erred in denying his motion for substitute counsel. We address each of Baker's claims in turn.

### A. Admission of Phone Call

We review a district court's evidentiary rulings for an abuse of discretion. *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007); *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008). We "will leave rulings about admissibility undisturbed unless we are left with the definite and firm conviction that the district court committed a clear error in judgment." *Bell*, 516 F.3d at 440 (citation omitted). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *Id.* (citation omitted).

However, because Rule 404(b) deals with the admission of evidence of other acts on the part of the defendant, for Rule 404(b) determinations, we review "for clear error the district court's factual determination that the other act occurred; . . . de novo the court's legal determination that evidence of the other act is admissible for a proper purpose; and . . . for abuse of discretion the court's determination that the probative value of the evidence is not substantially outweighed by a risk of unfair prejudice." *United States v. Barnes*, 822 F.3d 914, 920–21 (6th Cir. 2016).

Baker's first argument on appeal is that the district court erred in admitting a particular 2017 phone call between himself and Mace, who at the time was cooperating with the government. The district court found that the evidence was probative of Baker's knowledge and his unlawful

relationship with Mace.[1]  Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  However, the rule provides for admissibility of such evidence for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "Trial courts employ a three-part test to determine the admissibility of 404(b)(2) evidence."  *Barnes*, 822 F.3d at 920.  The district court must consider "(1) whether there is sufficient evidence that the other act in question actually occurred; (2) whether the evidence of the other act is probative of a material issue other than character; and (3) whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect."  *United States v. Emmons*, 8 F.4th 454, 474 (6th Cir. 2021) (citation omitted).  As to the probative value of the evidence, the trial court must analyze whether "(1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered."  *Id.*

Baker does not dispute that the conversation occurred, but rather challenges the district court's decisions on steps two and three of the 404(b) analysis—that is, its determination that the evidence was probative on a material issue other than character and its determination that the potential prejudicial effect of the evidence did not substantially outweigh its probative value.

Contrary to Baker's first argument, the government demonstrated a legitimate 404(b) purpose by offering the evidence to prove knowledge.  We have upheld the admission of evidence

---

[1] In the alternative, the district court held that the conversation could be admissible as *res gestae* evidence.  But the government failed to properly preserve its *res gestae* arguments on appeal by not meaningfully developing these arguments before this Court.  *See Puckett v. Lexington*, 833 F.3d 590, 610–11 (6th Cir. 2016).  However, as explained below, the government still prevails on this evidentiary issue because the evidence was admissible for a valid 404(b) purpose.

that is probative of knowledge—particularly when, as in this case, the defendant puts knowledge at issue when claiming to be an unwitting participant in or a victim of the wrongdoing. *See, e.g., United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994) ("Knowledge is a 'material issue' when the defendant claims he was unaware that he was committing a criminal act."); *United States v. Jobson*, 102 F.3d 214, 221 (6th Cir. 1996) ("[P]rior bad acts are not admissible to prove defendant's knowledge unless defendant places his mental state at issue. . . ."); *United States v. Lash*, 937 F.2d 1077, 1087 (6th Cir. 1991) ("[The defendant] had sought to present himself as only a bookkeeper who had no knowledge of illegal activity. The evidence of [the defendant's] participation in other similar businesses and money laundering was relevant to establish that he understood that [the relevant activity] was fraudulent."). Baker similarly put his knowledge of wrongdoing at issue when he claimed, in opening and closing statements, that he was an unwitting participant in the charged conspiracy. Therefore the 2017 call between Mace and Baker was admissible for this valid 404(b) purpose.

Second, Baker argues that the district court erred in balancing the probative value of the evidence with its potential prejudicial effect. In determining the probative value of evidence, courts consider "the availability of other means of proof, which would reduce the need for the potentially confusing evidence." *United States v. Myers*, 123 F.3d 350, 363 (6th Cir. 1997). In this case, while there was plenty of direct evidence tying Baker to the fraud conspiracy—such as his opening the account into which the fraudulent refund checks were deposited—there was less evidence that showed that Baker knew that his behavior was illegal as opposed to aiding a legitimate business of Mace's. As discussed above, Baker made knowledge a material issue when he claimed to be an unwitting participant in criminal activity, and the government did not represent that it had other, less-confusing means of showing knowledge of the illegality of the scheme.

Further, it is not clear that the 2017 call was highly prejudicial to Baker. The 2017 call was not a prior conviction of Baker's—some of the most prejudicial 404(b) evidence. *See Johnson*, 27 F.3d at 1193 ("When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact."). Nor was it evidence of an other bad act that, though not a prior conviction, could lead to the inference that "once a [criminal], always a [criminal]." *Bell*, 516 F.3d at 444. It seems unlikely that jurors, after hearing the phone call, came to the sort of impermissible conclusions that 404(b) balancing is intended to prevent. Further, as the government points out, the district court gave a limiting instruction, telling the jury to consider the other act evidence only for valid 404(b) purposes and not for any other purpose. Given the strong probative value and limited prejudicial effect, this is sufficient to cabin the evidence to its legitimate purpose without undue prejudice. *See Lash*, 937 F.2d at 1087. The district court therefore did not err in admitting the phone call.

### B. IRS Agent Testimony and *Touhy*

Baker also appeals the district court's refusal to order IRS Agent O'Boyle to testify, despite Rohrbaugh's counsel's alleged compliance with the required procedures. As stated above, we generally review the district court's evidentiary determinations for an abuse of discretion. *White*, 492 F.3d at 398; *Bell*, 516 F.3d at 440. However, the government claims that Baker did not sufficiently preserve this issue for appeal by failing to object to the *Touhy* issue in the trial court, and therefore has waived this claim such that we cannot review it on the merits. In the alternative, the government argues that Baker raises his *Touhy* argument for the first time on appeal and therefore urges us to apply the plain error standard. *United States v. Knowles*, 623 F.3d 381, 385 (6th Cir. 2010). Essentially, the government argues that because Baker's co-defendant, and not

Baker's counsel, objected in court when the district court failed to order the government to make IRS Special Agent O'Boyle available as a witness, we either cannot review this claim or must review it under the plain error standard. Baker, meanwhile, argues that Rohrbaugh's objection can be attributed to him such that he properly preserved the issue for appellate review.

Our case law points in both directions. We have previously allowed a defendant's objection to be attributed to his co-defendant in recognition of the "futility of requiring each defendant to raise a redundant objection." *United States v. Baker*, 458 F.3d 513, 517–18 (6th Cir. 2006) (collecting cases). We have also noted that where one defendant in a multi-defendant case raises an issue in trial court, it does not preserve the issue for all co-defendants. *United States v. Abboud*, 438 F.3d 554, 567–68 (6th Cir. 2006)). Because Baker's claim fails under any standard of review, we assume without deciding that he has preserved his issue for appellate review and reach the merits of his claim. *See United States v. Judge*, 649 F.3d 453, 461 (6th Cir. 2011).

Some background on the *Touhy* regulations is necessary. Pursuant to 5 U.S.C. § 301, executive agencies may promulgate rules regarding the procedures by which their employees may testify about agency-related matters. The Supreme Court endorsed agencies' authority to promulgate such regulations in *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Because O'Boyle was an IRS agent whose testimony was sought on an IRS-related matter, defense counsel needed to comply with the promulgated *Touhy* rules for IRS employees to testify. In relevant part, those rules mandate that no IRS officer can testify "without a testimony authorization." 26 C.F.R. § 301.9000-3(a). An IRS officer who "receives a request or demand for IRS records or information for which a testimony authorization . . . may be required" shall notify the disclosure officer. 26 C.F.R. § 301.9000-4(b). A demand is "any subpoena or other order of any court," while a request is "any request for testimony of an IRS officer, employee or contractor or for production of IRS

records or information, oral or written, by any person, which is not a demand." 26 C.F.R. § 301.9000-1(d)–(e). And DOJ regulations state that "[i]f oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought" must be given to the relevant DOJ attorney. 28 C.F.R. § 16.23.

In this case, Rohrbaugh's counsel attempted to subpoena O'Boyle the day before counsel sought to call him to the stand, at the very close of trial. Rohrbaugh's counsel claimed that, due to an emergency at the IRS office where O'Boyle worked, his process server was unable to serve O'Boyle with the subpoena and instead left it under his door. At trial the next day, Rohrbaugh's counsel noted that he wanted O'Boyle to testify as to his enlisting of Mace and allegations that Mace had made false statements. Rohrbaugh's counsel then asked the district court to order O'Boyle to appear or be held in contempt of court. The district court refused, stating that "unless the *Touhy* requirements are met, there are no grounds for the district court to compel an appearance." R. 130, Page ID #3507. The government, for its part, argued that *Touhy* had not been honored and that defense counsel needed to provide a written request for the testimony to both IRS counsel and the civil division of the U.S. Attorney's Office. When asked whether it could "facilitate the process," the government responded that it could pass along the information that defense counsel had just proffered to the IRS and relevant DOJ counsel. R. 130, Page ID #3909–10. Rohrbaugh's attorney said that his client was entitled to O'Boyle's testimony. Baker's counsel agreed and stated that he would also have an interest in questioning O'Boyle, but admitted that he did not seek a subpoena. The district court indicated that it was eager to move proceedings along but that it was amenable to re-opening the case if defense counsel made the required showing.

Later that day, the government reported that the DOJ's position was that defense counsel had not complied with *Touhy* because there was no written statement or affidavit setting forth the testimony sought, and that, even if there was procedural compliance with *Touhy*, the DOJ would not authorize the testimony because "it is not reasonably calculated to be admissible and/or relevant evidence in the case." *Id.* at Page ID #3556. But the government noted that it had not heard back from the IRS regarding its position on whether defense counsel had complied with the IRS's *Touhy* regulations. When the district court asked if there was an opportunity for defense counsel to cure, the government replied that even if defense counsel complied with DOJ procedure and provided a written affidavit, the government would still withhold authorization because the substance of the testimony would remain the same. The district court "urge[d]" the government to remain open to receiving emails from defense counsel regarding further compliance with *Touhy*, and then asked defense counsel whether it had anything further. *Id.* at Page ID #3557. Rohrbaugh's attorney and Baker's attorney both replied "No, Your Honor," and did not contest the government's latest representation that it had not complied with the *Touhy* regulations. *Id.* at Page ID #3558.

Baker claims that the district court's decision not to require O'Boyle to testify deprived him of his Sixth Amendment right to call witnesses. Further, Baker argues that the district court's decision was in error because Rohrbaugh's attorney substantially complied with the *Touhy* regulations by (1) attempting to serve a subpoena on O'Boyle and (2) communicating with the government at trial about what he sought in O'Boyle's testimony, which the government admitted to passing along to the IRS. *See* R. 130, Page ID #3513. But Baker's argument must fail due to defense counsel's failure to pursue the matter.

First, both Baker's attorney and Rohrbaugh's attorney appeared to abandon any attempt to argue the *Touhy* issue. As stated above, when directly asked by the district court if they had a response to the government's claim that only a written affidavit could cure the *Touhy* defect and even that would not cure the substantive problems with the testimony, Rohrbaugh's attorney and Baker's attorney both said "No." R. 130, Page ID #3558. And neither attorney appears to have presented the written affidavit requested by the government,[2] or asked the district court to re-open proceedings, as it indicated it was willing to do. In declining to do so, both attorneys failed to establish that they had complied with *Touhy*. Without a sufficient showing of *Touhy* compliance, Baker cannot challenge the district court's action on Sixth Amendment grounds. *See United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981) ("The question of whether these procedures deny the defendants their Sixth Amendment right to call and cross-examine witnesses is not reached until the defendants follow the procedures and then have their demands denied. Because [the defendants] failed to make a demand in accordance with [the relevant *Touhy* regulations], they have no constitutional claim."). Therefore, Baker's claim that his Sixth Amendment right to call witnesses was violated by the district court's decision must fail.

We also observe without resolving another problem with Baker's argument. It is not clear that Rohrbaugh's attorney substantially complied with the *Touhy* regulations, or that such compliance can be imputed to Baker. While the government, at the district court's request, facilitated communication of defense counsel's proffer to the IRS, defense counsel made no

---

[2] It is true that the IRS's *Touhy* regulations seemingly allow for oral requests for testimony as well. 26 C.F.R. § 301.9000-1(c) (defining a request as "any request for testimony of an IRS officer, employee or contractor or for production of IRS records or information, oral or written, by any person, which is not a demand"). Thus the government's insistence on a written affidavit may have been in error. Still, given that defense counsel's compliance with *Touhy* was doubtful in other ways, and defense counsel appeared to abandon their *Touhy* arguments later in the proceedings, this is not enough to constitute reversible error.

showing that it had communicated directly with the IRS, other than counsel's representation about the failed service of process. But the regulation appears to place the burden on defense counsel to make the request or demand for IRS testimony to an IRS officer. *See* 26 C.F.R. § 301.9000-4 ("[A]n IRS officer . . . who receives a request or demand for IRS records or information for which a testimony authorization is or may be required shall notify promptly the disclosure officer. . . ."). While we issue no holding on this matter, as its resolution is not necessary for this appeal, we note that an oral request in open court may not satisfy this obligation.

It might have been preferable for the district court to have analyzed the *Touhy* regulations, heard the parties' arguments regarding defense counsel's compliance with them, and issued a formal ruling. But it is not an abuse of discretion not to do so where neither defense attorney asked for such a ruling or, even when prompted by the district court, made any arguments in favor of their *Touhy* compliance. Future litigants who seek testimony from officers of government agencies should diligently consult the relevant *Touhy* framework, err on the side of serving a timely subpoena or at the very least a written demand (or, if the regulations allow, an oral request) on the relevant agency, and zealously pursue the issue in court. Because the defendants in this matter failed to do so, the district court committed no reversible error.

### C. Baker's Motion to Withdraw Counsel

We review a district court's denial of a counsel's motion to withdraw for an abuse of discretion. *United States v. Mack*, 258 F.3d 548, 555–56 (6th Cir. 2001). An abuse of discretion occurs where the district court "relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009) (citation omitted). "When the granting of the defendant's request would almost certainly

necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *Id.* at 467 (citation omitted).

Shortly before sentencing, Baker's counsel moved to withdraw. At sentencing, the district court gave Baker the opportunity to articulate his disagreements with counsel. Baker described issues with counsel's trial performance and his handling of Baker's potential tax liability. Baker also indicated that he did not seek to represent himself. But Baker had trouble articulating a true conflict, and in response, the district court told him that "[i]f you were really to persuade me that throughout this sentencing hearing, Mr. Baker, you were unable or unwilling to work with Mr. Hartwig, I would consider giving you new counsel." R. 251, Page ID #5462. The district court continued: "Today I will take you into custody, regardless of whether I sentenced you or not. And once you're in custody, it is going to be much harder to find your own attorney, hire your own attorney." *Id.* Baker alleges that the district court's statement that it would take him into custody and its failure to analyze the merits of his request constituted an abuse of discretion.

Baker's argument must fail for two fundamental reasons. First, the district court conducted a thorough inquiry into his representation. "[A] defendant wishing to substitute counsel must bring any serious dissatisfaction with counsel to the attention of the district court." *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citation omitted). "Once a defendant does so, the district court is obligated to inquire into the defendant's complaint and determine whether there is good cause for the substitution." *Id.* In this case, Baker was given a lengthy opportunity to raise his arguments before the district court. And the district court specifically asked Baker a number of times what his conflict with counsel entailed. This colloquy was sufficient to satisfy the district court's obligation to inquire. *See United States v. Hudson*, No. 21-4126, 2023 WL 1463701, at *5 (6th Cir. Feb. 2, 2023) (finding no abuse of discretion where the district court conducts a colloquy

- 14 -

with the defendant and inquires into defendant's complaints); *United States v. Marrero*, 651 F.3d 453, 466 (6th Cir. 2011) (finding no abuse of discretion where eight pages of transcript were "dedicated to the district court's attempts to nail down the nature of" the defendant's dissatisfaction with his attorney). And the district court implicitly found no good cause for substitution when it gave Baker the choice of proceeding with Hartwig as counsel or remanding him to custody while it considered the issue further. *See United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) ("An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel."). Therefore, the district court complied with the requirements of a substitute counsel request.

Second, the district court's statement that it would take him into custody if he maintained his desire for new counsel was not coercive. The district court was essentially informing Baker that he would be taken into custody that day either way. Baker was being sentenced that day; a custodial sentence was all but certain. Or if he pursued his substitute counsel motion, he would be taken into custody pending the district court's consideration of that motion so as not to reward him for an eleventh hour motion. Because Baker would have been taken into custody on the day of sentencing whether or not he withdrew his motion, we cannot say that he was coerced just because the district court informed him of this fact. Therefore, the district court made no error.

## III.    CONCLUSION

For the reasons stated above, the judgment of the district court is **AFFIRMED**.