NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0120n.06

No. 10-5290

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jan 31, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF |
| | ) | KENTUCKY |
| AUDREY LOUIS JOHNSON, JR., | ) | |
| | ) | O P I N I O N |
| Defendant-Appellant. | ) | |

BEFORE:    DAUGHTREY, MOORE, and McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.** Defendant-Appellant Audrey Louis Johnson, Jr. was convicted in a jury trial of aiding and abetting another with knowingly or intentionally possessing with intent to distribute more than 50 grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2. He contends that his conviction rests on evidence that was erroneously admitted under Federal Rule of Evidence 404(b) and the prosecutor's improper closing remarks. He seeks reversal and remand for new trial. Because the district court properly admitted the evidence, any error in admitting the contested evidence was harmless, and the prosecutor's closing remarks were not flagrant, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

**A. Factual Background**

This case arises from a controlled purchase of crack cocaine between a confidential informant, Walter Lee Dominique Smith ("Dominique") and Kenneth Duncan ("Duncan"), which took place on September 26, 2006. Dominique was a confidential informant ("CI") with the Oldham County Police Department in Louisville, Kentucky. His handler was Officer Larry Congleton. During the summer of 2006, Dominique became acquainted with Duncan while getting his hair cut at the Kentucky College of Barbering ("the barber college"), where Duncan was a student, and through their mutual participation in Narcotics Anonymous. Dominique learned of Duncan's involvement in dealing crack cocaine through "general conversations" with him. Dominique informed Officer Congleton about Duncan, and Duncan became the target of an investigation.

On September 13, 2006, Duncan used Dominique's cell phone to call another cell phone number. Dominique provided the number of the other cell phone to Agent Congleton, who then obtained an administrative subpoena to get the subscriber information. The subscriber information showed that Audrey Johnson, Jr. ("Johnson") was the account holder and that he lived on Dumesnil Street in Louisville, KY. Officer Congleton also obtained Johnson's driver's license information, which revealed the same address.

Dominique and Officer Congleton began arranging a controlled purchase. In Dominique's recorded phone calls to Duncan, both Duncan and Dominique referred to a third party who would supply the crack. While discussing the price, Duncan said, "We go see him," and "That's what he told me." When setting up the sale, Dominique said, "Have him meet you at the shop," and "Tell

him to make sure all the weight is there." At trial, Dominique testified that he did not know exactly who "him" was, just that he understood Duncan would be getting the crack from someone else.

On September 26, Dominique met with Officer Congleton and other Drug Enforcement Agency agents to prepare for a controlled purchase of two ounces of crack. Officers set up surveillance, searched Dominique and his vehicle, counted out $1600 ($800 for each ounce), and outfitted Dominique with a wire. Phone records showed that Duncan called the number attributed to Johnson three times that day. Dominique met Duncan at the barber college, and the two men went inside Dominique's car. Dominique joked that perhaps he did not want the crack after all, upon which Duncan became upset, saying "no, don't do this man, you just had this man go whip this shit up." Duncan then got out of the car, and Dominique observed Duncan meet with a man on a green scooter with a tall pole bearing an orange flag attached to the back. Dominique said, "He on a scooter, he on a scooter at the end of the building" over the wire to relay to the officers that Duncan was meeting with a third man. When Duncan returned to the car, he said, "It's always butter, baby." Duncan testified that he was referring to the crack. Once Dominique saw that the substance appeared to be crack, he paid Duncan. Duncan then went up to the man on the scooter again, and shortly after, he drove off. Police briefly followed him but broke off after the man began to suspect being followed. Dominique, followed by Officer Congleton, drove to a prearranged meet location, where he handed over the crack and was searched to ensure he did not keep any of the drugs or money. Dominique received $500 for his services.

Three days later, on September 29, 2006, Officer Congleton went to the Dumesil Street address. There, parked in a carport behind the residence, Officer Congleton saw a green scooter with an orange flag.

## B. Procedural Background

On June 4, 2007, Duncan and Johnson were indicted by a grand jury of aiding and abetting each other in knowingly or intentionally possessing with intent to distribute and distributing fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2. Duncan pled guilty, but Johnson elected to go to trial. Though Duncan at first refused to testify against Johnson, he later wrote a letter to the U.S. Attorney's Office offering a "water-tight" conviction of Johnson. Duncan admitted at trial that he was testifying in exchange for a five-year sentence reduction, which would halve his original ten-year sentence.

Before trial, the court heard arguments on the introduction of 404(b) evidence of prior drug transactions in which Johnson supplied crack to Duncan. The Government submitted that the evidence was relevant to establish Johnson's knowledge and intent regarding drug trafficking. Over Defendant's objection, the court admitted the evidence on the basis that it was relevant to identity, plan, and intent, and concluded that the probative value of the evidence outweighed the prejudicial value.

At trial, the Government sought to prove that Duncan was not acting alone but had a supplier for the September 26 sale, that Johnson was that supplier, and that Johnson was the man on the green scooter that day. Dominique provided an account of the September 26 sale as related above. Officer Congleton corroborated Dominique's account, testifying that he observed an exchange of something

from the man on the scooter to Duncan, whereupon Duncan immediately turned and walked back to Dominique's car and consummated the sale. Officer Congleton said he knew the transaction took place once Duncan reentered the car because Dominique was counting out the money, signaling that he had the drugs. Officer Congleton then observed Duncan get out of Dominique's car, walk back to the man on the scooter, and again saw an exchange of something from Duncan to the man on the scooter. Congleton testified that the scooter was lime green with a large orange flag attached to the back end.

Duncan corroborated this sequence of events and identified Johnson as the man on the scooter and the supplier for this particular deal. He testified that he became acquainted with Johnson in May 2006 at the barber college, where Johnson was also a student. Regarding the sale, Duncan confirmed that when he first got out of Dominique's car to meet Johnson, Johnson gave him the two ounces of crack, and when he approached Johnson again after the sale, he handed Johnson the money. Duncan stated that he was just the middle man and that he was not going to make any money off the deal but was eventually paid $50. He also stated that he had seen Johnson ride the same green scooter a few times before, but admitted on cross examination that Johnson would sometimes let others ride the scooter and that scooters were common in that part of town. Most relevantly to this appeal, Duncan testified that Johnson had regularly supplied him with crack throughout the summer of 2006, for a period of four or five months. He described purchasing between a half ounce to an ounce of crack from Johnson on a weekly basis, which he would then resell.

The defense's theory of the case was that Duncan was acting alone—that he possessed enough cocaine base to consummate the sale himself—and that the man on the scooter was not Audrey Johnson. The defense presented no witnesses but relied on impeaching Government witnesses and putting the Government to its burden. The defense showed that Dominique, the CI, was less than a completely forthright person, as he illegally copied and sold CDs while working as a CI, in violation of his agreement with the Government not to participate in any illegal activities without prior approval. Duncan confirmed that Dominique sold bootleg recordings on the day of the controlled purchase. In its cross examination of Officer Congleton, the defense focused on Officer Congleton's inability to describe the man on the scooter with any particularity beyond his race, general build, and clothing, and his failure to check whether Johnson had ever purchased a registered moped. Officer Congleton also stated that Kentucky law requires mopeds above a certain engine size to bear an orange flag on an antenna. The defense also pointed out that Duncan called many other phone numbers frequently, none of which were further investigated by Officer Congleton, and that Duncan's contact with Johnson on September 26 consisted only of voicemail messages, not actual conversations. And, while Duncan insisted that in 2006 his only source of supply was Johnson, he later said that he began dealing regularly in April 2006, a few weeks before he met Johnson in May. When defense counsel asked Duncan who his supplier was in April, Duncan responded it was a man named Robert Montgomery and that he dealt with Montgomery only once.

At the end of the trial, the prosecutor stated in his closing argument, "The only issue in this case . . . is whether or not Audrey Johnson was the person who actually drove the drugs over there

that day." In his rebuttal statement, the prosecutor stated, "So, when you take a look at the evidence here, there's been absolutely no evidence presented in this case that puts the defendant anywhere else but at the college barber shop at that time."

The court then gave the jury the following limiting instructions:

> You also heard testimony of other uncharged acts of the defendant, other than those that are actually charged in the indictment. You may consider this other testimony only as it relates to the defendant's identity, plan, or intent to commit the charged crime. You may not use the testimony of the other uncharged acts, if you believe it, as evidence of the character of the defendant or his propensity to commit the charged crime in this case. In other words, just because someone did something once doesn't mean they are going to do it again, if you even believe the first testimony.

> A defendant has an absolute right not to testify. A defendant need not prove anything. Therefore, the fact that a defendant did not testify or did not call any witnesses cannot be considered in any way by you in making your deliberations.

The jury found Johnson guilty of aiding and abetting the trafficking of 50 grams or more of crack cocaine. He was sentenced to a term of 120 months imprisonment followed by five years supervised release. Johnson timely appeals, arguing that the admission of Duncan's testimony about Johnson's prior drug deals and the prosecutor's closing comments regarding his lack of an alibi constitute reversible error.

## II. ANALYSIS

### A. Rule 404(b)

#### 1. Standard of Review and Applicable Law

This Court reviews a district court's evidentiary determinations under Rule 404(b) for an abuse of discretion. *United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010) (quoting *United States v. Jenkins*, 345 F.3d 928, 936 (6th Cir. 2003)). "A trial court abuses its discretion 'when it

relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir. 1998) (quoting *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir. 1985)). "A new trial is not required unless the error affects substantial rights." *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008).

Federal Rule of Evidence ("Rule") 404(b) provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

This Circuit has outlined a three-step process to determine the admissibility of evidence under 404(b). First, the district court must decide whether there is sufficient evidence that the other acts actually occurred. *United States v. Haywood*, 280 F. 3d 715, 720 (6th Cir. 2002). Second, the court must decide whether evidence of the other acts is "probative of a material issue other than character." *Id*. (quoting *United States v. Johnson*, 27 F.3d 1186, 1191 (6th Cir. 1994)). Third, the court must apply Rule 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id*. Johnson challenges the district court's determination at each step.

## 2. Rule 404(b) Analysis

We find at the outset that Johnson forfeited his argument that the other acts evidence was not supported by sufficient evidence because he did not contest it in the district court. *See United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011) (finding the same argument forfeited because defendant

did not raise it in district court) (citing *Vance v. Wade*, 546 F.3d 774, 781 (6th Cir. 2008)). And, in any event, we find no error in the district court's determination. Johnson's contentions are based on the fact that the district court did not explicitly consider the sufficiency of the evidence, focusing exclusively on whether the evidence could be admitted for a proper purpose, and that the only evidence of those other acts came from an interested witness, Duncan. This court does not require a district court to make an explicit finding that prior acts occurred, stating that "[s]uch findings need not be express, but rather, may be implicit by virtue of the fact that the court admitted the evidence." *United States v. Matthews*, 440 F.3d 818, 828 (6th Cir. 2006) (quoting *United States v. Alford*, 182 F.3d 918, 1999 WL 397946, at *1 (6th Cir. June 3, 1999) (unpublished table decision)), *abrogated on other grounds by Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *see also United States v. Wheeler*, 349 F. App'x 92, 96 (6th Cir. 2009) (finding district court's conclusion that prior act occurred was not error "[r]egardless of any purported lack of analysis"). This court has also found that the testimony of a single witness is sufficient for a reasonable jury to conclude that the defendant committed the prior acts, even where the witness is less than completely reliable. *Matthews*, 440 F.3d at 828-29 (affirming district court's admittance of witness testimony about prior drug purchase from the defendant where witness could not remember exactly when or how many times he had purchased drugs from the defendant and whether he had done so in person or through an intermediary). The fact that the testimony establishing a defendant's other acts is impeachable does not render the evidence irrelevant or insufficient, as long as "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988).

Second, we find that the evidence was properly admitted for the purpose of establishing identity. To be admissible under Rule 404(b), other acts evidence "must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried." *United States v. Wynn*, 987 F.2d 354, 357 (6th Cir. 1993) (quoting *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985)). "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Bell*, 516 F.3d at 441-42.

Johnson put his identity in issue by arguing at trial that he was not the man on the scooter. Duncan's testimony that Johnson had been his regular supplier for the four or five months preceding the controlled purchase was probative of identity because it established that Johnson engaged in similar acts during the same time frame and with the same partner as the charged offense, making it more probable that Johnson was the man on the scooter on September 26. *See* FED. R. EVID. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action"). This serves a purpose distinct from showing that Johnson merely acted in conformity with a prior bad act. Rather, the existence of a sustained, ongoing supplier-dealer connection between Duncan and Johnson during the relevant time period makes it more likely that it was in fact Johnson, as opposed to another individual, who showed up on the motor scooter that day. In *United States v. Thomas*, 74 F.3d 676 (6th Cir. 1996), *abrogated on other grounds by Morales v. American Honda Motor Co.*, 151 F.3d 500, 515 (6th Cir. 1998), we found that a co-defendant's testimony that the defendant

regularly bought powder cocaine from the co-defendant, converted it to crack, and then resold it was

probative of identity because "the evidence about the uncharged drug transactions involved the same

type of conduct and occurred during the same time frame and in the same location as the offense

charged[.]" Similarly, we find Duncan's testimony probative of identity here.

Third, we consider the district court's Rule 403 determination. "One factor in balancing

unfair prejudice against probative value under Rule 403 is the availability of other means of proof."

*United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996); *see also Huddleston*, 485 U.S.

at 688 (quoting Advisory Committee Notes on Rule 404(b) that urge the balancing decision be made

"in view of the availability of other means of proof"). Identity was front and center in the case, and

Duncan's testimony was singularly persuasive on that issue. The dissent asserts that once Duncan

identified Johnson as the man on the scooter, additional testimony was superfluous. Not

so—Duncan's additional testimony provided a context that made it more probable that the identity

of the man on the scooter was Johnson rather than someone else. As this court has recognized, "The

fact that a criminal defendant previously participated in a series of the same crimes with a particular

confederate may, in some instances, raise a fair inference identifying the defendant as the

confederate's unknown partner." *United States v. Phillips*, 599 F.2d 134, 137 (6th Cir. 1979). The

probative value of Duncan's testimony is, of course, balanced against the recognition that "with all

admitted evidence of prior bad acts," some prejudice potentially inheres. *United States v. Lattner*,

385 F.3d 947, 958 (6th Cir. 2004). However, we find that in this particular case, the risk of

propensity reasoning—he did it before, so he must have done it again—is minimized because both

the "before" and "now" pieces of evidence were from the same witness, and the witness was one the

jury must have believed in order to convict. Further, the district court here carefully considered the significance of the evidence on non-propensity grounds and arrived at the conclusion that the probative value was not substantially outweighed by potential prejudice. We afford a district court's Rule 403 balancing decision "broad discretion," looking at the evidence "in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir.1993)). The court also gave a firm limiting instruction to the jury at the close of trial,[1] which we have recognized can mitigate potential prejudice. *E.g., Merriweather*, 78 F.3d at 1077-78. In light of these facts, we find no abuse of discretion in the district court's determination that the probative value of Duncan's testimony was not substantially outweighed by the risk of prejudice. The evidence was thus properly admitted under Rule 404(b).

3. **Harmless Error**

Even assuming the evidence were improperly admitted, any such error was harmless. *See Haywood*, 280 F.3d at 724 ("[W]e will presume that the district court's error was reversible unless we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous

---

[1]The district court's instruction correctly focused on the permissible purpose of identity but also stated the jury could use the testimony as evidence of plan and intent, uses on whose propriety we do not express an opinion. We have previously declined to find such flaws fatal to the validity of the overall instruction or the ultimate conviction. *See United States v. Myers*, 123 F.3d 350, 364 (6th Cir. 1997) (finding limiting instruction that included an improper purpose "adequately warned the jury of the potential misuses of the other-acts evidence"); *Johnson*, 27 F.3d at 1194 (finding contradictory jury instructions that included improper purposes troubling but insufficient to contaminate the verdict in light of overwhelming evidence of guilt). We find that the instruction here sufficiently instructed as to the proper use of Duncan's testimony.

action from the whole, that the judgment was not substantially swayed by the error[.]'") (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). Considering the full evidentiary context, we are confident that the judgment here was not substantially swayed by Duncan's testimony regarding prior deals. Whether the jury convicted Johnson depended entirely on whether they believed Duncan, and we find it improbable, on the facts of this case, that a juror who did not find Duncan's testimony credible regarding the identification of Johnson as his supplier on September 26 would nonetheless convict Johnson because of Duncan's testimony regarding prior deals. In so finding, we do not in any way impugn the jury's prerogative to believe all, none, or part of a witness's testimony. *See*, *e.g.*, *Young v. Trombley*, 435 F. App'x 499, 504 (6th Cir. 2011). We merely recognize that, as stated above, the risk of propensity reasoning on these particular facts was highly doubtful.

## B. Prosecutor's Closing Remarks

### 1. Standard of Review and Applicable Law

"Whether the government's closing argument constitutes prosecutorial misconduct presents a mixed question of law and fact that we review *de novo*." *United States v. Tarwater*, 308 F.3d 494, 510-11 (6th Cir. 2002). When reviewing claims of prosecutorial misconduct, this Court first determines whether the prosecutor's statements were improper. *United States v. Tocco*, 200 F.3d 401, 420 (6th Cir. 2000) (citing *United States v. Krebs*, 788 F.2d 1166, 1177 (6th Cir. 1986)). If so, this Court must then determine whether they were flagrant, warranting reversal. *United States v. Carroll*, 26 F.3d 1380, 1385-87 (6th Cir. 1984). Even if the improper statements were not flagrant, reversal may still be warranted in some instances. *Id*.

### 2. **Prosecutorial Misconduct**

"The Fifth Amendment guarantees an accused the right to remain silent during his criminal trial and prevents the prosecution from commenting on the silence of a defendant who asserts the right." *Jenkins v. Anderson*, 447 U.S. 231, 235 (1980) (citing *Griffin v. California*, 380 U.S. 609, 614 (1965)). Indirect references to a defendant's failure to testify can also violate the Fifth Amendment privilege. *Byrd v. Collins*, 209 F.3d 486, 533 (6th Cir. 2000).

At issue here is the following remark made by the prosecutor in his rebuttal argument: "So, when you take a look at the evidence here, there's been absolutely no evidence presented in this case that puts the defendant anywhere else but at the college barber shop at that time." Johnson argues that these statements suggested that he should have provided an alibi by testifying, which infringed on his Fifth Amendment privilege. The Government argues that the prosecutor's comment was proper rebuttal to defense counsel's closing argument and an accurate summation of the evidence presented at trial, not a comment on Johnson's failure to testify or failure to present any evidence.

This court has noted, relying on cases from the Fifth, Seventh, and Ninth Circuits, that the proscription against commenting on a criminal defendant's silence "does not extend to a defendant's failure to call a witness or to otherwise present exculpatory evidence so long as the prosecutor does not tax the exercise of the defendant's right to remain silent." *Tarwater*, 308 F.3d at 511. Under this standard, the prosecutor's comment in this case may have fallen within permissible bounds. However, it is unnecessary to dwell on the technical propriety or impropriety of the remark because, assuming that it was improper, it was not flagrant and thus does not warrant reversal.

To determine flagrancy, the Sixth Circuit considers: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *Tocco*, 200 F.3d at 420 (quoting *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). Johnson concedes that any alleged impropriety was unintentional and that the statement was isolated but argues that the total strength of the evidence against him was weak and the statement was prejudicial and uncured by the court's cautionary instruction to the jury.

Regarding Johnson's first point, we find the evidence against him was substantial. As for his second point, in view of the entire record, the remark was sufficiently insulated, occurring in a brief moment during a trial lasting two and a half days. This court has refused to find reversible error in similar circumstances. See *United States v. Sims*, 68 F.3d 476, 1995 WL 620965, at *6 (6th Cir. Oct. 19, 1995) (unpublished table decision) ("Even in cases of flagrant prosecutorial misconduct, a reviewing court will refuse to find reversible error if the circumstances occurred only briefly during a long trial and the court sufficiently instructed the jury to disregard them.") (internal alterations and quotations omitted). Further, Defendant's concern that the prejudicial effect was enhanced because this remark was one of the last things the jury heard is addressed by the district court's firm instruction, which the jury heard after the closing arguments:

> A defendant has an absolute right not to testify. A defendant need not prove anything. Therefore, the fact that a defendant did not testify or did not call any witnesses cannot be considered in any way by you in making your deliberations.

Three of the four flagrancy factors lean heavily in favor of the prosecution, and the one arguable factor in favor of Johnson (potential prejudice) is mitigated by the isolation of the comment and the curative instruction. Thus, we do not find that the prosecutor's remarks were flagrant.

Johnson argues that his conviction should be reversed and his case remanded for new trial even if the statement is not considered flagrant. Improper, non-flagrant statements may entitle a defendant to a new trial if "proof of [the defendant's] guilt was not overwhelming, [the defendant] objected to the improper remarks, and the court failed to cure the error with an admonishment to the jury." *United States v. Stover*, 474 F.3d 904, 915 (6th Cir. 2007) (quoting *Carroll*, 26 F.3d at 1390) (alterations in original). Here, Johnson properly objected to the statement. The court also failed to cure the statement with an admonishment to the jury. However, the court did so for good reason and, in this particular case, the lack of an admonishment may have actually caused less prejudice to Johnson. Defense counsel conceded as much at trial. After the jury was excused, the court explained to defense counsel:

> I noticed you made an objection or were going to make an objection during closing. I recognize what it was about. I really thought it was a minor transgression, if it was a transgression. To say something about it at the time would call more attention to what I sort of felt was really a very vague reference to the defendant failing to prove something. So that's why I waved you off, so to speak. You are welcome to put it on the record if you would like.

Defense counsel responded, "I think Your Honor understands my objection. I think Your Honor, in light of the trial as proceeded, handled it correctly." Because the court's failure to admonish the jury was an attempt to, and likely did, minimize any potential prejudice, we give less weight to this

factor in this particular case.  In light of the strong evidence of Johnson's guilt presented at trial, we find that the fundamental fairness of trial was not compromised by the prosecutor's isolated remark.

### III.  CONCLUSION

For the reasons above, we **AFFIRM** the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Because I conclude that the district court abused its discretion in concluding that the unfair prejudicial impact of admitting the prior bad-acts evidence to prove identity was outweighed by its probative value,[1] I respectfully dissent.

Although I agree with the majority that identity was at issue, I conclude that the district court's Rule 403 determination was an abuse of discretion. As the majority correctly identifies, a significant consideration in the Rule 403 analysis is "the availability of other means of proof" that are less prejudicial than the evidence at issue. *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) (citing *Huddleston v. United States*, 485 U.S. 681, 688 (1988)). In Johnson's case, the prosecution relied on Duncan's eyewitness identification to connect Johnson to the crime. Once Duncan identified Johnson as the man on the scooter, additional testimony from Duncan regarding Johnson's identity was superfluous—either the jury was going to believe Duncan's identification was accurate or they were not. Nothing about Duncan's testimony regarding Johnson's prior bad acts bolstered Duncan's credibility. In fact, the only way that this additional testimony could have made the connection to Johnson more plausible was by the impermissible suggestion that the adage "once a drug [supplier], always a drug [supplier]" applied to Johnson. *See United States v. Bell*, 516 F.3d 432, 444 (6th Cir. 2008). This is so because Duncan did not testify about anything "distinctive" or "signature" regarding Johnson's prior bad acts, nor did he testify as to their "agreement to commit a series of crimes" so as to provide probative context. *United States v. Phillips*, 599 F.2d 134, 136-

---

[1]The unfair prejudicial impact of admitting the prior bad acts to prove identity is reviewed for abuse of discretion. *See United States v. Clay,* --- F.3d ---, 2012 WL 43592, at *3 (6th Cir. Jan. 10, 2012).

37 (6th Cir. 1979) (holding inadmissible confederate's testimony of defendant's prior participation in bank robberies with confederate). Instead, Duncan provided "only general testimony" about Johnson's "repeated performance" of prior bad acts. *Id.* This Circuit has deemed prior bad-acts evidence inadmissible in similar circumstances. *See id.*[2] Thus, because the unfairly prejudicial impact of the evidence clearly outweighed its minimal, if not minuscule, probative value in light of the "singularly persuasive" nature of Duncan's eyewitness identification, I would hold that the district court abused its discretion in determining otherwise.

Furthermore, I cannot conclude that any error was harmless. With such minimal evidence connecting Johnson to the crime and the influence of the inadmissible evidence on the jury's treatment of the prosecution's key witness unknown, my confidence in the validity of the conviction is undermined. *See Bell*, 516 F.3d at 448 (concluding error was not harmless where evidence was not overwhelming and government had "only circumstantial" evidence connecting defendant to the crime); *United States v. Haywood*, 280 F.3d 715, 724-25 (6th Cir. 2002) (finding where defendant's "guilt was significantly contested" error was not harmless even though the "government offered sufficient proof" of guilt). The fact that the jury was instructed on three separate impermissible

---

[2]The general nature of Duncan's testimony also renders this case distinguishable from our holding in *United States v. Thomas*, 74 F.3d 676, 678 (6th Cir. 1996), which involved the admission of prior bad acts to prove identity. In *Thomas*, the evidence at issue was significantly more probative because the prior bad acts involved the defendant selling crack at the exact same location and in the exact same manner as he was alleged to have done in the charged offense. *Id.* at 679. In contrast, as previously stated, the testimony with respect to Johnson's past activities was very vague; Duncan did not testify that Johnson routinely arrived on a scooter at the same location to supply Duncan with crack for sale. Duncan testified only that Johnson supplied him with drugs in the past. Consequently, Duncan's testimony as to Johnson's prior bad acts was significantly less probative than the testimony at issue in *Thomas*.

purposes for admission[3] does not cure, but only underscores, this conclusion. Accordingly, I respectfully dissent.

---

[3]I do not conclude, nor does the majority urge, that the evidence was admissible for any other purpose pursuant to Federal Rule of Evidence 404(b).