**UNITED STATES of America, Plaintiff–Appellee**

v.

**James Edward LYKINS, Defendant–Appellant.**

**No. 12–6242.**

United States Court of Appeals, Sixth Circuit.

Nov. 21, 2013.

BEFORE: BOGGS, CLAY, and GILMAN, Circuit Judges.

CLAY, Circuit Judge.

Defendant James Lykins appeals from his conviction by a jury on two counts: manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Specifically, Defendant appeals: (1) the district court's denial of Defendant's motion to suppress evidence obtained from a search of his home; (2) the district court's admission of evidence concerning Defendant's prior methamphetamine-related conviction, pursuant to Fed.R.Evid. 404(b); (3) the district court's telling the jury about Defendant's motion to suppress; and (4) the district court's refusal to instruct the jury on the lesser charge of simple possession of methamphetamine. We unanimously conclude that oral argument is unnecessary, *see* Fed. R.App. P. 34(a)(2)(C), and **AFFIRM** Defendant's conviction.

## BACKGROUND

### A. Defendant's 2004 Conviction and Supervised Release

In October 2004, Defendant pleaded guilty to conspiracy to manufacture and distribute methamphetamine. Defendant admitted in his plea agreement that he had been a member of the conspiracy for approximately six months and had actively participated in manufacturing and distributing methamphetamine. Defendant was sentenced to 60 months' imprisonment, followed by five years of supervised release. Defendant was released from federal custody in August 2009 and began his term of supervised release.

As a condition of supervised release, "Defendant was ordered to 'permit a probation officer to visit him … at any time at home or elsewhere and shall permit confiscation of any contraband observed in

plain view of the probation officer.' " *United States v. Lykins,* No.Crim. 12–02, 2012 WL 1947346, at *1 (E.D.Ky. May 30, 2012) (quoting Defendant's release agreement). Defendant also agreed to " 'submit his person, residence and curtilage, office or vehicle to a search, upon direction and discretion of the United States Probation Office.' " *Id.*

### B. October 2011 Search of Defendant's Home and Arrest

Defendant's first two years of supervised release proceeded without major incident. But on September 12, 2011, his probation officer, John D'Alessandro, received an undated, anonymous letter stating that "[s]omeone really needs to check on Jimmy Lykins. He is out of control and needs drug tested [sic]." *Id.* at *2. Prompted by this letter, Officer D'Alessandro visited Defendant's residence on October 12, 2011. D'Alessandro originally intended to conduct a home inspection, meaning he would walk though Defendant's home and look for anything suspicious in plain view. But once D'Alessandro arrived at Defendant's home, accompanied by Craig Peoples, the local sheriff, D'Alessandro changed his mind and ordered a full search. That search turned up voluminous evidence of methamphetamine manufacturing, including chemical precursors and hardware needed to make the drug. D'Alessandro also found a .38–caliber revolver in the microwave oven.

Defendant was arrested after the search by state officials. A federal prosecution began in January 2012, when Defendant was indicted in the United States District Court for the Eastern District of Kentucky for manufacturing methamphetamine and being a felon in possession of a firearm.[1]

---

1. Defendant was also charged with possessing  a firearm in furtherance of a drug trafficking

Defendant was transferred into federal custody and pleaded not guilty to all counts.

## C. Defendant's Motion to Suppress

Defendant then moved to suppress the evidence seized at his residence during the search on October 12, 2011. The district court held an evidentiary hearing, focusing on the facts supporting D'Alessandro's decision to order a full-fledged search, not just a home inspection.

In D'Alessandro's recounting, as he was en route to Defendant's home on October 12, 2011, he stopped by the office of the sheriff of Pendleton County, Kentucky—Peoples—to speak about an unrelated matter. When D'Alessandro mentioned his ultimate destination, Peoples mentioned that he had just received an e-mail notification from the National Precursor Log Exchange ("NPLEx") stating that Defendant's wife had just purchased a methamphetamine precursor nearby. NPLEx is an online system that tracks sales of methamphetamine precursors. The NPLEx e-mail listed Defendant's address as one of his wife's last known addresses. Peoples himself had been investigating Defendant and his wife for possible involvement with methamphetamine manufacturing. As a general matter, when Peoples received an NPLEx notice concerning an individual under investigation, it led him "to believe that if they're not preparing to manufacture methamphetamine that day, then they will maybe in the, in the next day or so." (℞. 31, Suppression Hr'g Tr., at 154.) Peoples shared these concerns with D'Alessandro. D'Alessandro suspected that Defendant might be using or manufacturing methamphetamine in his home and set off for there with Peoples in tow.

D'Alessandro and Peoples arrived at Defendant's home shortly after leaving Peoples' office. The car belonging to Defendant's wife was nowhere to be seen. D'Alessandro knocked on Defendant's front door, and Defendant promptly answered. D'Alessandro told Defendant that he was concerned Defendant was violating his release conditions. Defendant voluntarily let D'Alessandro inside.

What happened next is the subject of controversy. D'Alessandro testified that, as he entered the residence, he held the door open for Peoples to come in with him. Peoples had originally gone around to the side of Defendant's residence. Peoples testified that he followed D'Alessandro into the residence, but that "[i]t took [him] a few minutes, seconds to get from where [he] was standing at the end of the trailer up to Mr. D'Alessandro at the front door." (*Id.* at 163.) At a proceeding in state court prior to the federal government taking over Defendant's prosecution, Peoples had testified that he entered the residence a few minutes after D'Alessandro. Defendant, who testified at the suppression hearing, reported that Peoples and D'Alessandro came in separately. But under cross-examination, Defendant conceded that he was unsure how much time passed before Peoples entered. Weighing this evidence, the district court found that "D'Alessandro walked in first and held the door open for Peoples to follow." *Lykins,* 2012 WL 1947346, at *2.

These details matter because of what Peoples ostensibly said to D'Alessandro as they entered. Defendant was cooking hamburgers, and the smell filled the home. But as Peoples testified: "First breaking through the threshold of the home, I received a smell, an odor that I knew was a chemical odor, and in this instance it was camping fuel or Coleman fuel." (℞. 31,

crime, but this count was dismissed prior to trial.

Suppression Hr'g Tr., at 157.) Peoples had extensive training and experience concerning methamphetamine manufacturing, and knew that "Coleman fuel or camping fuel is one of the ingredients used in the manufacture of methamphetamine." *(Id.* at 158.) The smell of the fuel made Peoples suspect that methamphetamine was being cooked in Defendant's home.

D'Alessandro also smelled hamburgers cooking as he entered the home, but testified that Peoples drew his attention to the smell of the fuel. The district court heard a range of testimony about this brief conversation. Peoples testified that he asked D'Alessandro "if he smelled that," but did not recall the exact words he used. *(Id.* at 164–65.) D'Alessandro initially testified during the suppression hearing that "right when we were entering the door, the sheriff tapped me on the shoulder and asked me if I smelled something" apart from the hamburgers. *(Id.* at 117.) On cross-examination, D'Alessandro elaborated: "the sheriff indicated that he smelled what he indicated was a methamphetamine precursor.... When I crossed the threshold [ ] the sheriff said hey, I smell something that I know could be methamphetamine trafficking." *(Id.* at 130.) From this testimony, the district court found that "Peoples tapped D'Alessandro on the shoulder and asked if he smelled something. Peoples described the smell to D'Alessandro, at which time D'Alessandro distinguished the chemical odor from the hamburgers.... Peoples also indicated to D'Alessandro that the chemical odor smelled like Coleman fuel, a potential ingredient used to manufacture methamphetamine." *Lykins,* 2012 WL 1947346, at *3 (footnotes omitted). According to D'Alessandro, once Peoples informed him of the fuel smell and its import, D'Alessandro decided to conduct a full search.

The district court held that the search of Defendant's home would be justified so long as it was supported by reasonable suspicion. The court concluded that evidence met this standard, and therefore denied Defendant's motion to suppress.

## D. Trial and Conviction

Prior to trial, the government filed a notice of its intent to introduce Defendant's 2004 methamphetamine-related conviction, as well as the statements made in his plea agreement, pursuant to Rule 404(b) of the Federal Rules of Evidence. Defendant filed a motion *in limine* to exclude this evidence—a motion that the district court denied. The case proceeded to trial.

At trial, the jury was given some of this case's procedural back story. Defense counsel began cross-examining D'Alessandro on the details of the search, presumably to impeach his credibility. The government objected to this line of questioning as an attempt to relitigate the motion to suppress. The district court allowed these questions for the purposes of challenging D'Alessandro's credibility, but gave the jury a lengthy limiting instruction, over Defendant's objection. During this instruction, the district court referenced Defendant's motion to suppress, and told the jury that the court had denied that motion.

On June 26, 2012, after a two-day trial, the jury convicted Defendant on both counts. Defendant had asked that the jury be instructed on a count of possession of a controlled substance, but the district court denied this request. The district court sentenced Defendant to 262 months' imprisonment. This appeal timely followed.

## DISCUSSION

### A. Defendant's Motion to Suppress

■ On appeal, Defendant contends that the district court should have granted his motion to suppress the evidence obtained from the search of his home. "When reviewing a district court's decision on a motion to suppress, we review its findings of fact for clear error and its legal conclusions de novo." *United States v. Lyons*, 687 F.3d 754, 762 (6th Cir.2012). "A factual finding is clearly erroneous when a court, on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir.2009) (quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Navarro–Camacho*, 186 F.3d 701, 708 (6th Cir.1999). And when "a district court denies a motion to suppress, we consider the evidence in the light most favorable to the government." *United States v. Moon*, 513 F.3d 527, 536–37 (6th Cir.2008) (quotation marks omitted). Re-

viewing the district court's decision, we cannot conclude that the court clearly erred in denying Defendant's motion.

The search of Defendant's residence was conducted without a warrant. However, because Defendant was on supervised release, the warrantless search may nevertheless pass constitutional muster if it was reasonable under " 'the totality of the circumstances.' "[2] *United States v. Knights*, 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)). The key circumstances in *Knights* were the defendant's status as a California state parolee—which affected both his privacy interest and the government's interest in protecting the public—and the search condition placed on the defendant's parole. *See id.* at 120–21, 122 S.Ct. 587. Considering these circumstances, the search in *Knights* required only reasonable suspicion that criminal activity was afoot. *See id.* at 121, 122 S.Ct. 587. In the instant case, the district court concluded that the reasoning of *Knights*

---

2. Such a search may also be justified under the "special needs" doctrine, which permits warrantless searches "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (quotation marks omitted). Pursuant to this doctrine, a probation officer may conduct a search so long as he complies with a policy that requires sufficient justification for the search. *See United States v. Henry*, 429 F.3d 603, 608 (6th Cir.2005). Unlike in the general Fourth Amendment reasonableness context, an officer's "actual motivations" in conducting a special needs search "do matter." *Ashcroft v. al-Kidd*, —— U.S. ——, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (quotation marks omitted). A law enforcement officer cannot use the special-needs doctrine as a "stalking horse" simply to evade the Fourth Amendment's usual warrant and probable cause requirements. *See, e.g., Unit-

ed States v. Watts*, 67 F.3d 790, 794 (9th Cir.1995), *rev'd on other grounds*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997).

This Court has questioned whether a stalking-horse argument can succeed following the Supreme Court's ruling in *United States v. Knights*, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). *See United States v. Penson*, 141 F. App'x 406, 410 n. 2 (6th Cir.2005). However, since we have explicitly held post-*Knights* that the special-needs exception "remains a legitimate basis for justifying" a search of a probationer, *see United States v. Herndon*, 501 F.3d 683, 688 (6th Cir.2007), it follows that an officer's motivations still matter when the government relies on that theory to justify a search.

Defendant argues that the search of his home was invalid following the stalking-horse argument. The government, however, does not rely on the special-needs doctrine to justify this search. Defendant's stalking-horse argument is therefore not relevant.

meant that D'Alessandro required only reasonable suspicion before ordering the search. *See Lykins*, 2012 WL 1947346, at *7–8. Unlike the defendant in *Knights*, though, Defendant here was on federal supervised release, *see generally United States v. Johnson*, 529 U.S. 53, 59–60, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000), and the search conditions on his release were less invasive than those in *Knights*. But based on the facts of the case before us, we need not resolve whether reasonable suspicion alone would have justified this search. Even if the standard were as high as probable cause, the search of Defendant's residence was constitutional.

Probable cause exists when an officer has "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion ... [that] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Lyons*, 687 F.3d at 764 (quotation marks and citations omitted). On appeal, the government contends that four facts justify the search of Defendant's home: Defendant's prior conviction, the anonymous letter, the NPLEx e-mail, and the odor that Peoples smelled. The district court correctly concluded that the anonymous letter carries little weight in this analysis—it simply prompted D'Alessandro to visit Defendant's home. *See Lykins*, 2012 WL 1947346, at *11; *see also United States v. Payne*, 181 F.3d 781, 790–91 (6th Cir.1999). But the remaining facts—the NPLEx e-mail, Defendant's history of manufacturing methamphetamine, and, above all, the odor of a methamphetamine precursor—together gave D'Alessandro probable cause to believe that criminal activity was afoot. *See United States v. Brooks*, 594 F.3d 488, 494–95 (6th Cir. 2010); *United States v. Elkins*, 300 F.3d 638, 659–60 (6th Cir.2002); *see also United States v. Crumb*, 287 Fed.Appx. 511, 514 (6th Cir.2008) (collecting cases).

Our analysis would be more complicated if the district court clearly erred in finding that Peoples had told D'Alessandro that Peoples smelled Coleman fuel, and that this fuel was an ingredient of methamphetamine. We cannot conclude, however, that this finding was clear error. True, the district court heard conflicting testimony on whether Peoples and D'Alessandro entered together—and thus whether Peoples could have told D'Alessandro about the Coleman fuel. So too, Peoples never testified that he explicitly told D'Alessandro that he smelled a methamphetamine precursor. D'Alessandro's testimony at the suppression hearing initially mirrored Peoples', but under cross-examination, their brief exchange under the transom became more elaborate: "When I crossed the threshold [ ] the sheriff said hey, I smell something that I know could be methamphetamine trafficking"; "the sheriff indicated that he smelled what he indicated was a methamphetamine precursor"; and "the sheriff indicat[ed] that he smelled something that was common in methamphetamine manufacturing." (®. 31, Suppression Hr'g Tr., at 130, 145.) In sum, the testimony of Peoples and D'Alessandro did not entirely overlap, but nor did they contradict one another.

The district court's factual finding thus rests primarily on D'Alessandro's credibility. We accord great deference to a district court's credibility determination made during a suppression hearing. *United States v. Jackson*, 682 F.3d 448, 453–54 (6th Cir.2012), *cert. denied*, —— U.S. ——, 133 S.Ct. 370, 184 L.Ed.2d 219 (2012). The district court implicitly credited D'Alessandro's version of events. Given our due deference to the district court's findings of fact, we cannot conclude that this reliance was clear error. Because the district court's factual findings remain undisturbed, so does the legal conclusion that

follows from the totality of the circumstances. The district court therefore did not err in denying Defendant's motion to suppress.

## B. Evidence Admitted Under Fed. R.Evid. 404(b)

■ Defendant next asserts that the district court erred in admitting evidence related to his 2004 conviction, pursuant to Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) permits the admission of prior bad acts, provided that they are admitted for an acceptable purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed.R.Evid. 404(b)(2). The district court faces a tripartite inquiry before admitting evidence under this Rule: first, the district court determines if the prior bad act took place; second, the court determines if the evidence was permissible for a proper purpose; and third, the district court evaluates whether the evidence's unfair prejudicial effect substantially outweighs its probative value. *See United States v. Ayoub*, 498 F.3d 532, 547 (6th Cir.2007). Only the second and third steps are at issue here. "We review the district court's decision to admit this evidence for an abuse of discretion." *United States v. Allen*, 619 F.3d 518, 523 (6th Cir.2010); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Applying this standard of review, we affirm the district court's admission of Defendant's 2004 conviction and its admis-

sion of his prior involvement in methamphetamine manufacturing.

### 1. Admissibility for a Proper Purpose

Evidence admitted pursuant to Rule 404(b) must be probative of an issue other than character. Determining whether this is the case "requires a three part inquiry. Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v. Bell*, 516 F.3d 432, 441–42 (6th Cir.2008) (quotation marks and citations omitted). Here, the government offered this evidence to prove Defendant's intent to manufacture methamphetamine, as well as knowledge of the manufacturing process. These facts were in issue, and are proper purposes pursuant to Rule 404(b).[3] *See id.* at 442–43.

Defendant argues, however, that his plea statements and his conviction were not probative of knowledge or intent. "To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is substantially similar and reasonably near in time to the specific intent offense at issue." *United States v. Haywood*, 280 F.3d 715, 721 (6th Cir.2002) (quotation marks omitted). Defendant urges that this standard has not been satisfied, since his earlier conviction was for conspiracy, because eight years had passed since he committed that crime, and because methamphet-

---

**3.** Both of the parties and the district court proceeded under the assumption that manufacturing a controlled substance, in violation of 21 U.S.C. § 841(a)(1) is a specific intent crime. However, this Court has held that simple manufacturing (as opposed to manufacturing with intent to distribute) is a general intent crime. *See United States v. Green*, 548 F.2d 1261, 1270 (6th Cir.1977); *see also Unit-*

*ed States v. Jackson*, 213 F.3d 1269, 1294 (10th Cir.2000), *vacated on other grounds*, 531 U.S. 1033, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000); *United States v. Jewell*, 532 F.2d 697, 698 (9th Cir.1976) (en banc). Nonetheless, Defendant put his general intent at issue by pleading not guilty to the charged crimes. *See United States v. Lattner*, 385 F.3d 947, 957 (6th Cir.2004).

amine-manufacturing techniques had changed in those years.

Although Defendant's 2004 conviction was for conspiracy to manufacture and distribute methamphetamine, in his plea agreement, he admitted first-hand participation in making the drug. Defendant's manufacturing experience is highly probative of his knowledge and intent to manufacture the same drug years later. *See United States v. Hofstatter*, 8 F.3d 316, 322–23 (6th Cir.1993) (per curiam). The method for manufacturing methamphetamine may have changed while Defendant was incarcerated, but as Peoples succinctly testified at trial, "Process is different. Chemicals are the same." (®. 69, Trial Tr., at 574.)

Defendant also challenges the admission because eight years separated the prior bad acts from the conduct that led to his most recent conviction. "There is no absolute maximum number of years that may separate a prior act and the offense charged," *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir.1985), but eight years is beyond the time frame previously considered by this court, though not beyond the time frame approved in cases from other circuits. *See id.* (collecting cases). Nonetheless, given that the evidence tends to show Defendant's knowledge of methamphetamine's ingredients—ingredients that did not change over the course of eight years—the evidence was probative of knowledge and intent, despite its vintage. *See United States v. Love*, 254 Fed.Appx. 511, 516–17 (6th Cir.2007); *cf.* Fed.R.Evid. 609(b) (providing that evidence of a criminal conviction more than 10 years old may still be admitted to impeach a witness' credibility).

### 2. Balancing Probative Value Against Unfair Prejudice

If prior bad acts took place and are offered for a proper purpose, the district court then examines the evidence pursuant to Rule 403 of the Federal Rules of Evidence. As we review for abuse of discretion, "we consider (1) whether the other act evidence was unduly prejudicial; (2) the availability of other means of proof; (3) when the other acts occurred; and (4) whether the district court gave a limiting instruction." *United States v. Brown*, 147 F.3d 477, 483 (6th Cir.1998).

Evidence of Defendant's conduct and conviction undoubtedly prejudiced him in the eyes of the jury. *See United States v. Jenkins*, 593 F.3d 480, 486 (6th Cir.2010). Introducing this evidence also raised the specter that Defendant could be prejudiced by "something that happened in the distant past." *United States v. Myers*, 123 F.3d 350, 363 (6th Cir.1997). However, the remaining *Brown* factors weigh in favor of admission. The government had few other means to prove Defendant's knowledge or intent, or that he—as opposed to his wife or the owner of the shed where some methamphetamine precursors were found—was the manufacturer. *See id.* The district court also gave an adequate limiting instruction when the evidence was admitted. In this context, and given the highly deferential nature of this Court's review, *see, e.g., United States v. Layne*, 192 F.3d 556, 573–74 (6th Cir. 1999), we cannot say that the district court abused its discretion in admitting this evidence.

### C. The District Court's Limiting Instruction Regarding D'Alessandro's Testimony

■ Defendant next asserts that the district court prejudiced the jury by telling it about Defendant's motion to suppress. This Court reviews a district court's jury instructions and general conduct during

trial for abuse of discretion. *See United States v. McAllister,* 693 F.3d 572, 584 (6th Cir.2012); *United States v. Russell,* 595 F.3d 633, 642 (6th Cir.2010). We hold that the district court did abuse its discretion, but that this error does not compel a retrial.

The district court was prompted to admonish the jury during defense counsel's cross-examination of D'Alessandro. Defense counsel began to inquire into matters related to the conduct of the search of Defendant's home, presumably in an attempt to impeach D'Alessandro. The government objected and requested that the district court give a limiting instruction to ensure that the jury would consider the evidence only to evaluate D'Alessandro's credibility. The court agreed to so instruct the jury and stress that the legality of the search was not open for discussion. The district court could have given a simple limiting instruction. Instead, the court told the jury that Defendant had moved to suppress the evidence from the October 12, 2011 search and that the court had denied that motion. Once the jury knew that Defendant had moved to suppress that evidence, it may have incorrectly concluded that Defendant had admitted that the evidence belonged to him. The court's admonishment thus constituted impermissible judicial testimony. *See* Fed.R.Evid. 605; *United States v. Berber–Tinoco,* 510 F.3d 1083, 1091 (9th Cir.2007). This is the reason that remarks such as these "are better left unsaid." *United States v. Ruiz–Altschiller,* 694 F.2d 1104, 1108 (8th Cir.1982).

Although we hold that the district court abused its discretion, this error was ultimately harmless. The court told the jury that the evidence was admitted only on the issue of D'Alessandro's credibility, and that issue ultimately went to whether the government satisfied its burden of proof.

Given the voluminous evidence that methamphetamine manufacturing was taking place in Defendant's home, we cannot say "with fair assurance that the error materially affected the defendant's substantial rights—that the judgment was substantially swayed by the error." *United States v. Clay,* 667 F.3d 689, 700 (6th Cir.2012).

**D. Lesser Included Offense**

■ Finally, Defendant asserts that the district court committed reversible error when it declined to instruct the jury on the lesser offense of simple possession of methamphetamine, in addition to the count of manufacturing the drug. We disagree.

Rule 31(c)(1) of the Federal Rules of Criminal Procedure provides that "[a] defendant may be found guilty of ... an offense necessarily included in the offense charged." A defendant is entitled to have the jury instructed on a lesser included offense if "(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser." *United States v. Colon,* 268 F.3d 367, 373 (6th Cir.2001). "Where a proper request is made in the district court, we review a refusal to instruct on a lesser-included offense for abuse of discretion. But if a defendant is entitled to such an instruction, it is generally reversible error not to give it." *United States v. LaPointe,* 690 F.3d 434, 439 (6th Cir.2012) (quotation marks and citation omitted).

Defendant was charged with manufacturing a controlled substance, 21 U.S.C. § 841(a)(1), and requested that the district court instruct the jury on the lesser charge

of simple possession of a controlled substance. 21 U.S.C. § 844(a). Defendant was not entitled to this instruction because the elements of simple possession are not "a subset of the elements of the charged offense." *Carter v. United States*, 530 U.S. 255, 260, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (quotation marks omitted). This inquiry is purely statutory, "and does not depend on inferences that may be drawn from evidence introduced at trial." *Schmuck v. United States*, 489 U.S. 705, 720, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Simply put, possession is not an element of the manufacturing count. *Compare* 6 Cir. Pattern Jury Instruct. 14.03(1) (manufacturing), *with* 6 Cir. Pattern Jury Instruct. 14.04(1) (possession). Defendant argues that the elements of manufacturing implicitly include possession. But even if it is unlikely that a defendant would "manufacture" a drug without "possessing" it, it is not an impossibility. *Cf. Colon*, 268 F.3d at 377 ("Although distribution may involve the actual or constructive possession of a controlled substance, 'distribution' includes other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price.").

Further, the elements test was adopted to save courts from precisely these sorts of tangled inquiries. *See Schmuck*, 489 U.S. at 720–21, 109 S.Ct. 1443. Because Defendant cannot satisfy the "identical elements" requirement of the elements test, the district court was correct to deny his request to instruct the jury on simple possession.

## · CONCLUSION

For the reasons set forth above, we conclude that the district court did not err in denying Defendant's motion to suppress, denying his motion *in limine*, and refusing to instruct the jury on a charge of simple possession. Although we hold that the district court abused its discretion when it told the jury about Defendant's motion to suppress, we conclude that this error was ultimately harmless. Therefore, we **AFFIRM** Defendant's conviction.